[No. 44199.   En Banc.   September 28, 1978.]

THE CITY OF SEATTLE, *Respondent,* v. KELLY ANN BUCHANAN, ET AL, *Appellants.*

*John R. Muenster* and *Sarah Lytle* of Seattle–King County Public Defender and *Dan Wershow,* for appellants.

*John P. Harris, Corporation Counsel,* and *Richard S. Oettinger, Assistant,* for respondent.

ROSELLINI, J.—The five appellants were convicted in Municipal Court of violations of Seattle ordinance No. 102843, section 12A.12.150, defining as "lewd conduct" and making unlawful the public exposure of one's genitals or female breasts. They were each fined $100. The unchallenged findings show that the appellants were arrested in the Seattle Arboretum, where they were swimming and sunbathing with their breasts completely exposed. Two of them stood and tossed a "Frisbee" at some time during the period of exposure. The appellants were not engaged in any expressive or communicative activity. According to the evidence introduced on appeal to the Superior Court, the arrests had been made in response to several citizen complaints.

Rejecting contentions that the ordinance in question violates Const. art. 31 (amendment 61) (the equal rights amendment), as well as federal and state due process, equal protection, and freedom of expression and speech provisions, the Superior Court affirmed the convictions. These contentions are renewed on this appeal.

Const. art. 31, § 1, provides: "Equality of rights and

responsibility under the law shall not be denied or abridged on account of sex."

Thus far, we have had only one occasion to examine this provision.[1] In *Darrin v. Gould,* 85 Wn.2d 859, 540 P.2d 882 (1975), two young women challenged a refusal to allow them to play football on the high school team, which refusal was grounded upon a rule promulgated by a state-wide association of secondary schools. The plaintiffs' evidence showed that the young women were physically capable of playing on the team, met the team requirements, and had the permission of the school district. Against the argument that the rule was justified because most girls are incapable of meeting such requirements, this court held that it was unconstitutional as applied to the plaintiffs. The gist of the holding of the case was that eligibility must be determined on individualized characteristics, at least where equal access to sports programs is not made available to both sexes, and in the absence of a showing that the rule in question serves a rational purpose based upon actual differences which are present in every member of the particular sex.

The appellants do not deny the right of a municipal legislative body to enact laws for the protection of the public peace, order and morals. They concede that a legislative body may enact laws which apply only to the members of one sex, provided that they are based on actual differences between the sexes. They give as an example the role of childbearing, and state that the legislature could constitutionally pay a bonus to a woman who, during a given period of time, gave birth to (or refrained from giving birth to) a child. However, they contend that a law which provided a bonus to women for childrearing, and did not provide it to

---

[1]The provision has been considered by the Court of Appeals in the following cases, none of which was concerned with an issue similar to that presented in this case: *In re Hauser,* 15 Wn. App. 231, 548 P.2d 333 (1976) (Division One); *Smith v. Smith,* 13 Wn. App. 381, 534 P.2d 1033 (1975) (Division One); *Singer v. Hara,* 11 Wn. App. 247, 522 P.2d 1187 (1974) (Division One).

men, would be invalid, because men are equally capable of rearing children "beyond the short period of breast-feeding."

Their contention here is that there is no difference in appearance between the breasts of men and women sufficient to justify a law forbidding the exposure of the breasts of one and not the other, their assumption being that it is only the size or shape of women's breasts which inspired the ordinance in question.

At the trial, the appellants offered testimony of a physician, Dr. Charles Cowan, who said that there is no difference in the composition of the flesh of male and female breasts; that the breasts do not form a primary sex characteristic but a secondary one, and that the degree of development of the breasts does not determine sex. He said, in clarification of this latter testimony, that some men have breasts as large as those of some small-breasted women.[2]

The doctor was not asked and did not say whether there is any difference in function between the male and female breasts, and we see that the appellants agree that there is such a difference. They give it no weight, however, evidently because, as they view the legislative intent, function is not an element which the legislative body had in mind when it forbade the public exposure of female breasts.

We are unable to agree that the legislative body could only have been interested in the size or shape of female breasts when it included them among the parts of the human body which should not be exposed in public. It is

---

[2]Dr. Cowan's testimony is fortified in the appellants' brief by a letter appended thereto from another physician, Dr. Bruce Steir, which the respondent justifiably asks us to strike. The letter adds nothing of substance to the testimony of Dr. Cowan, the correctness of which we have no reason to doubt. We note with interest that Dr. Steir, in elaborating upon the phenomena that the breasts of some men develop to a size at which they are comparable to those of women with small breasts, explains that such development is usually the result of some endocrine or other disorder. Since the doctors' evidence tells only part of the story, and a part which we do not find determinative of the issue before us, we need not consider the legal impact of a similarity which results only from some physical malfunction in one of the sexes.

manifest from a reading of the section as a whole[3] that the City Council was concerned with those body parts and functions which, according to society's common sense of decency, should be kept private. These include the eliminative functions and the procreative functions. With respect to the latter, it was found to be in the public interest to order concealed, in addition to the genitals, the female breasts, which, unlike male breasts, constitute an erogenous zone and are commonly associated with sexual arousal.[4] The lawmakers no doubt took account of the fact that the breasts can be kept covered in public without inconvenience, since they perform no function which necessitates their being exposed to public view.

---

[3] "Section 12A.12.150 LEWD CONDUCT

"(1) As used in this section a 'lewd act' is:
   "(a) an exposure of one's genitals or female breasts;
   "(b) the touching, caressing or fondling of the genitals or female breasts; or
   "(c) sexual intercourse as defined in Section 12A.04.140(1)(c); or
   "(d) masturbation; or
   "(e) urination or defecation in a place other than a washroom or toilet room.

"(2) A person is guilty of lewd conduct if he intentionally performs any lewd act in a public place or at a place and under circumstances where such act could be observed by any member of the public.
   "(a) 'Public place' has the meaning defined in section 12A.12.020(1)(a).

"(3) The owner, manager or operator of premises open to the public wherein alcoholic beverages are sold, served or consumed is guilty of permitting lewd conduct if he intentionally permits or causes any lewd act on said premises.

"(4) This section shall not be applied to artistic or dramatic performances in a theatre or a museum." Seattle ordinance No. 102843.

[4] To illustrate the viability of the association of female breasts with sexual arousal, despite changing tastes and mores, we note the following which appeared in the Seattle-Post Intelligencer, August 9, 1977, § B, at 1, written by Emmett Watson:

   The Big eyeballing attraction during the hydro races—which even diverted some attention from the Blue Angels—was a dinghy carrying four topless girls—propelled mostly, it seemed, by the hot breath of male onlookers.

and from the Seattle-Post Intelligencer, August 10, 1977, § B, at 5:

   An Atlanta, Ga., ordinance requires shops to draw their blinds when the cloth[e]s on female window dummies are being changed. Understand it was passed as a result of a few traffic accidents.

When the legislative intent is viewed in light of the obvious purpose of the ordinance—to protect the public morals and its concern for the privacy of intimate functions—common knowledge tells us, as it undoubtedly told the trial judge, that there is a real difference between the sexes with respect to breasts, which is reasonably related to the preservation of public decorum and morals. Governmental bodies have a right to enact laws to maintain a decent society. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973); *Seattle v. Marshall,* 83 Wn.2d 665, 670, 521 P.2d 693 (1974).

We are told that concepts of morality and propriety are changing, and that public exposure of the female breasts is becoming increasingly less offensive. This may be the case, even though we are given no evidence to support the assertion, and it is obvious that in this instance, some persons were offended. If it is true, then it can reasonably be expected that public demand will soon make it imperative that this portion of the ordinance be repealed. Suffice it to say that the argument attacks the wisdom and necessity of the ordinance, matters which the courts lack the constitutional authority to decide.

The Supreme Court of the United States in *Goesaert v. Cleary,* 335 U.S. 464, 466, 93 L. Ed. 163, 69 S. Ct. 198 (1948), said:

> The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards.

We cannot perceive that the privilege sought here is one which involves any serious interest of the appellants. It does not fall within their rights of expression, religion, petition, political action, or association, or their right to privacy, or within any marital, familial, educational (as in *Darrin v. Gould, supra*), occupational, property, economic or social interest of theirs. It is not shown that the right is one which women generally demand or even wish to enjoy. On the other hand, the right of the public, including

women, to enact laws which tend to preserve the public peace and decorum (without at the same time interfering with the exercise of protected liberties) would be seriously curtailed were we to hold that the equal rights amendment forbids laws such as the ordinance we have before us. To do so would lend validity to the objections voiced by opponents of the amendment, and weaken public confidence in its beneficence.

The leading law review article pertaining to the proposed federal amendment recognizes that it is not intended or designed to strike down laws which are based upon actual differences in the sexes. *See* Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871, 893 (1971). Records of the United States House of Representatives and the Washington State Senate reveal the same understanding. *See* House of Representatives Report No. 92–359, 92nd Cong., 1st Sess. (1971), and Senate Journal, 42d Legislature (1972), at 345–46. The Yale Law Review writers also make clear their understanding that the provision is designed to protect the *substantial* rights of women. We share that understanding of its purpose and see no good reason to subvert it by using article 31 as a vehicle to thwart the public will on matters which the people deem to be in their best interest and which require only inconsequential sacrifices from the individual, where there is an actual difference between the sexes, to which the law reasonably relates.

There being such a difference between the breasts of males and females (however undiscernible to the naked eye of some), and that difference having a reasonable relationship to the legitimate legislative purpose which it serves, the ordinance does not deny equality of rights or impose unequal responsibilities on women. It applies alike to men and women, requiring both to cover those parts of their bodies which are intimately associated with the procreation function. We find that the ordinance in question does not violate Const. art. 31.

The theory is advanced that this ordinance denies the equal protection of the laws to the appellants. We have already shown that the law does not classify or discriminate on the basis of sex.

In *Hanson v. Hutt,* 83 Wn.2d 195, 517 P.2d 599 (1973), we held that a statute which denied unemployment benefits to pregnant women constituted a discriminatory classification based on sex and not on actual difference between the sexes. We found the classification to be suspect and therefore subject to the strict scrutiny test. Applying that test, we found that the purpose of the law in question—which was to provide benefits only to those *able* and willing to work—did not require denial of benefits to pregnant women, since pregnant women are generally not disabled. Since no compelling state interest was served by this classification, it was invalid under the equal protection clauses of the federal and state constitutions.

▪ That decision was based on the finding that the sexual difference involved (the *ability to become pregnant*) bore no substantial relationship to the state interest to be served (the denial of unemployment benefits to persons unable to work). Here, the sexual differences (the sexual arousal commonly associated with the female—but not the male—breasts) bear a direct relationship to the legislative purpose—the preservation of public decency and order. Furthermore, unlike the statute involved in *Hanson v. Hutt, supra,* the ordinance here does not prevent exposure by one sex only. It is true that it requires the draping of more parts of the female body than of the male, but only because there are more parts of the female body intimately associated with the procreative function. The fact that the ordinance takes account of this fact does not render it discriminatory. The slight difference in clothing requirements imposed upon the two sexes is necessary if the legislative purpose is to be served.

It is next suggested that the ordinance offends the due process clause of the fourteenth amendment to the United States Constitution because it is overbroad. Two cases are

cited in support of this theory. In *Cleveland Bd. of Educ. v. LaFleur* and *Cohen v. Chesterfield County School Bd.*, 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974), the United States Supreme Court struck down school board regulations which dictated mandatory maternity leave several months before the end of a teacher's pregnancy. Citing its precedents which had held that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the due process clause of the Fourteenth Amendment, the court found that the rule, which was applied regardless of an individual teacher's physical ability to continue teaching after the termination date, unnecessarily dampened the exercise of that liberty by discouraging decisions to bear children.

In *Gooding v. Wilson*, 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972), the remaining case relied upon, a statute forbidding certain kinds of speech described therein, was struck down because it could be applied to constitutionally protected speech. The defendant was allowed to challenge the constitutionality of the statute, even though his own speech was characterized as "fighting words," for which he could not claim First and Fourteenth Amendment protection.

It will be seen that the first of these cases involved the plaintiffs' personal choice in family matters, a protected liberty. The second was concerned with a law regulating speech, likewise a protected liberty.

No protected liberty or right of the appellants is asserted in this case, and the law does not purport to regulate such a liberty or right. The trial court's finding that the appellants were not engaged in any expressive or communicative activity has not been questioned. They were admittedly sunbathing and swimming in a public park. The right to expose the body to the sun in public has not yet been recognized as a right so fundamental that the people must have meant to protect it when they adopted their constitutions. The legislative body took care to exempt from its provisions those artistic and theatrical performances which

might conceivably involve the exercise of constitutional freedoms.

The appellants propose five hypothetical situations, in some of which the ordinance might be of doubtful application.[5] It is not claimed that any of these involves the exercise of a constitutional right. A criminal law is not rendered unconstitutional by the fact that its application may be uncertain in exceptional cases, as long as the general area of conduct against which it is directed is made plain. *Hygrade Provision Co., Inc. v. Sherman,* 266 U.S. 497, 69 L. Ed. 402, 45 S. Ct. 141 (1925); 21 Am. Jur. 2d *Criminal Law* § 17, at 100 (1965).

Should a court be called upon to apply the law in one of the hypothesized situations, it would be guided by principles of statutory construction which should enable it to correctly decide whether the particular exposure falls within the prohibition of the ordinance. Two examples are: (1) Courts are obliged to read a statute in the "'animating context of well–defined usage'". *State v. Dixon,* 78 Wn.2d 796, 805, 479 P.2d 931 (1971), quoting from *Beauharnais v. Illinois,* 343 U.S. 250, 253, 96 L. Ed. 919, 72 S. Ct. 725 (1952). (2) Criminal statutes should be strictly construed in favor of the defendant. *State v. Bell,* 83 Wn.2d 383, 518 P.2d 696 (1974). These two alone should resolve any ambiguity in the word "exposure" and "female breasts" should a doubtful case arise.

---

[5] "(1) A woman publicly nurses her baby;

"(2) A 10–year–old girl runs through the park wearing only cut–offs;

"(3) A woman strolls in a supermarket wearing a very scant bikini, which does, however, cover her nipples;

"(4) A woman goes to the theatre in a very fashionable dress which is constructed of transparent material in the bodice and cut in such a way that from some angles one can see her breasts entirely; and

"(5) A woman removes her bathing suit on a public beach, waves at passing boats, slowly applies suntan lotion to the frontal portions of her body, and sunbathes with her knees 12 to 18 inches apart. *Held:* No 'lewd conduct.' *People v. Gilbert,* 72 Misc. 2d 795, 339 N.Y.S.2d 743 (N.Y. City Crim. Ct. 1973)." Appellants' brief, at 21.

Pursuing their theory of overbreadth further, the appellants urge that this ordinance could be applied to deny constitutionally protected liberties. They hypothesize a situation in which female breasts are exposed in some kind of theatrical production in the arboretum, and declare that the ordinance is so broad that such exposure would be forbidden. In such a situation, they say, the ordinance would infringe upon a constitutionally protected right of free expression, and because that possibility exists, it must be struck down.

There is cited no authority to support the appellants' claim of a right to present a theatrical production in the arboretum. The arboretum, which belongs in part to the City of Seattle and in part to the University of Washington, is maintained by agreement between those two bodies as an arboretum and botanical garden, to which the public is freely admitted for the purpose of enjoying the display of trees and plants which are grown there. By statute, that portion of the arboretum which belongs to the university is to be used for arboretum and botanical garden purposes only. RCW 28B.20.350. If there is any provision, by city ordinance, regulation, agreement, or otherwise, which permits the presentation of theatrical productions in this very specialized park, it has not been called to our attention and we have been unable to uncover it.

The only other public place suggested by the appellants (not coming within the ordinary definition of a "theatre" or "museum") in which they might have a right to expose their breasts in an expressive or communicative performance is the public street. The authority which they cite for the assertion of this right is *Schacht v. United States,* 398 U.S. 58, 26 L. Ed. 2d 44, 90 S. Ct. 1555 (1970). In that case, the petitioner had worn parts of a United States military uniform while performing in a skit, featured in an anti–war demonstration and designed to create in the audience an understanding of and opposition to United States participation in the Vietnam war. The issue in the case was

whether the petitioner had violated a federal statute making it an offense to wear a military uniform without authority. The Supreme Court found that the skit in which the petitioner performed was a "theatrical production" within the meaning of a statute which permitted the wearing of the uniform in such productions if the portrayal did not discredit the armed forces. While the court took account of the fact that theatrical productions need not always be performed in buildings or even on a defined area such as a conventional stage, it did not have before it the question whether the demonstrators had a constitutional right to stage a theatrical production in the street. It was not suggested in the case that the demonstration was unlawful or that the demonstrators did not have a right to perform the skit as a part of it.

That case, turning as it does on a question of statutory interpretation, hardly stands for the proposition that topless theatrical or terpsichorean performances can be presented in the street, as a matter of constitutional right.

Not only have the appellants failed to establish that they have a right to expose their breasts in the arboretum or in the streets in a theatrical production, but they have offered no authority for the proposition that they have a right to engage in such activities in public places other than those expressly exempted under the act. The word "theatre" is not one of narrow meaning. *See Webster's Third International Dictionary* 2369 (1968); 4 Am. Jur. 2d *Amusements and Exhibitions* § 2 (1962). The encyclopedia states that the word, from the Greek, means literally "a place for seeing." Theatres are of various kinds. There are playhouses, opera houses, motion picture theatres, drive-in theatres, ballet theatres, and puppet theatres, and even open air theatres. We may take judicial notice that Seattle's Woodland Park has such a theatre. Thus the ordinance makes ample allowance for nude expression in appropriate places. We are not shown that it was required to permit such expression in its streets, parks, or other public places.

■ Those cases in which the United States Supreme Court has given its opinion upon the right to expose the female breasts as an incident to the constitutionally protected expression of ideas have not gone so far as to countenance the notion that such exposure may be made in any public place which a defendant chooses. Rather they have either expressly or tacitly acknowledged that such exposure is subject to reasonable regulation, even when it is done as an incident to that expression which is protected by the First Amendment.

In *California v. LaRue*, 409 U.S. 109, 117–18, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972), the United States Supreme Court sustained California liquor regulations which forbade explicitly sexual entertainment in places where intoxicating beverages were sold. Mr. Justice Rehnquist, speaking for the majority of the court, after recognizing the principle that an actor in a theatrical production is entitled to the constitutional right of freedom of speech, said:

> But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of "conduct" or "action," [citing cases]. In [*United States v.*] *O'Brien, supra* [391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968)], the Court suggested that the extent to which "conduct" was protected by the First Amendment depended on the presence of a "communicative element," and stated:
>
>> "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." 391 U.S., at 376.

This court applied this principle in *Seattle v. Hinkley*, 83 Wn.2d 205, 517 P.2d 592 (1973), where we upheld an ordinance regulating the dress of female employees in bars, in the face of a contention that the ordinance curtailed the women's right of free speech.

The opinion in *California v. LaRue, supra,* was written by Mr. Justice Rehnquist. Dictum from that case was used by the same justice in writing the opinion in a subsequent case to support a conclusion that an ordinance prohibiting any female from appearing in *any public place* with uncovered breasts was vulnerable to a claim of unconstitutional overbreadth. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975). This case, while relevant, was not cited by the parties.

The ordinance under consideration there made no allowance at all for artistic performances. For this reason, the Supreme Court found it overbroad. The court did not find it necessary to define the circumstances or to designate the places in which breast exposure would be entitled to constitutional protection, deeming it sufficient to adopt the federal district court's suggestion that a performance of the "Ballet Africains" (presumably in a theatre) would come within its ambit.

The opinion's brief discussion of the issue of overbreadth does, however, throw some light on the question. Its conclusion is based upon the dictum in *California v. LaRue, supra,* where the same author noted that the court had held that both motion pictures and theatrical productions are within the protection of the First and Fourteenth Amendments. The writer contrasted the bar room performances validly forbidden under the California statute with a performance by a scantily clad ballet troupe *in a theatre.* And when he came to distinguish the ordinance in *Doran v. Salem Inn, Inc., supra,* he did so on the ground that it applied "not merely to places which serve liquor, but to many other establishments as well." If the two cases are read together, along with the cases cited in *California v. LaRue, supra,* the conclusion is inescapable that when the court has spoken of constitutional protection for nudity or semi–nudity as a means of expression, it has had reference to artistic performances in a theatre of some kind.

It is hardly conceivable that the court meant to suggest, in *Doran v. Salem Inn, Inc., supra* at 933, that such performances may be given as a matter of right in all of the public places which the district court had noted were covered by the ordinance, in a paragraph quoted in the Supreme Court's opinion. The district court had said:

"The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in 'any public place' with uncovered breasts. There is no limit to the interpretation of the term 'any public place.' It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains' and a number of other works of unquestionable artistic and socially redeeming significance." 364 F. Supp., at 483.

By its own precedents, the Supreme Court had often recognized the right of cities and states to regulate offensive conduct in public places, even though it involves expressive activity or speech.

In *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), the high court upheld an anti-noise ordinance, as against a contention that its terms were broad enough to prohibit constitutionally protected speech, noting that the only speech which it would prohibit was that which was disruptive. Citing *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969), the court said that the public sidewalk adjacent to a schoolhouse may not be declared off limits for expressive activity; but in each case expressive activity may be prohibited if it materially disrupts classwork or involves substantial disorder or invasion of the rights of others.

In *Police Dep't v. Mosley,* 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972), the Supreme Court, while holding that the particular picketing ordinance involved made impermissible distinctions between peaceful labor picketing and other picketing, said that the court had continually

recognized that reasonable "time, place and manner" regulations of picketing may be necessary to further significant governmental interests. And in *Grayned* the court said that the nature of a place and the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.

If speech and picketing can be prohibited in certain places because of their nature and because they do not fit into the pattern of the normal activities of those places, all the more so can nudity as a means of expression be confined to places which are appropriate for such exhibitions. Exposure of the body as a means of artistic or dramatic expression is the only constitutionally protected exposure which has been suggested to us. Balancing this right of expression against the City's right to maintain public order and decency, it strikes us as not unreasonable that expression by way of body exposure in public should be restricted to buildings which are customarily used for artistic performances and where only consenting audiences attend. We do not think the Supreme Court meant to suggest in *Doran* that the constitution will not permit a city to prohibit nude performances in its streets, parks, and public places other than theatres.

Since the ordinance here specifically makes allowance for artistic performances in appropriate establishments, it is not open to the criticism which caused the court to strike down the ordinance in *Doran v. Salem Inn, Inc., supra.*

Another case relied upon, *Erznoznik v. Jacksonville*, 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975), in fact supports the validity of the ordinance here. In that case, a city ordinance prohibiting the showing of any motion picture film depicting nudity in a drive–in theatre was declared invalid. It was conceded by the city that the prohibition was broad enough to include constitutionally protected films. It was nevertheless argued that any film containing nudity, which could be viewed from a public place, was suppressible as a nuisance. The court denied this contention, holding that the ordinance discriminated

against movies solely on the basis of content, as a result of which drive–in theatres were discouraged from showing movies containing any nudity, however innocent or even educational. The footnote to that holding makes it plain that the court did not intend its ruling to apply to ordinances prohibiting public nudity. The court said, at page 211 n.7:

> Scenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work. See *Miller* v. *California,* 413 U. S. 15, 24 [37 L. Ed. 2d 419, 93 S. Ct. 2607] (1973); *Kois* v. *Wisconsin,* 408 U. S. 229 [33 L. Ed. 2d 312, 92 S. Ct. 2245] (1972). In this respect such nudity is distinguishable from the kind of public nudity traditionally subject to indecent–exposure laws. See *Roth* v. *United States,* 354 U. S. 476, 512 [1 L. Ed. 2d 1498, 77 S. Ct. 1304] (1957) (Douglas, J., dissenting) ("No one would suggest that the First Amendment permits nudity in public places"). Cf. *United States* v. *O'Brien,* 391 U. S. 367 [20 L. Ed. 2d 672, 88 S. Ct. 1673] (1968).

Not only did the court expressly distinguish indecent exposure laws, but the case dealt with a restriction on the showing of motion pictures, a medium of First Amendment expression, in a theatre. Like *Doran v. Salem Inn, Inc., supra,* it does not support the contention that the ordinance here is overbroad.

The appellants cite many cases which have held that a statute or ordinance which chills the exercise of a constitutional right, or can be applied to a constitutionally protected activity, is invalid.

All of the cited cases involved statutes or ordinances which regulated activities which enjoy First or Fourteenth Amendment protection.[6] In most of these cases the person challenging the constitutionality of the enactment was one

---

[6]*Speech: Terminiello v. Chicago,* 337 U.S. 1, 93 L. Ed. 1131, 69 S. Ct. 894 (1949); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 96 L. Ed. 1098, 72 S. Ct. 777 (1952); *Roth v. United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957); *Cox v. Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965); *Redrup v. New York,* 386 U.S. 767, 18 L. Ed. 2d 515, 87 S. Ct. 1414 (1967); *Bachellar v. Maryland,* 397 U.S. 564, 25 L. Ed. 2d 570, 90 S. Ct. 1312 (1970);

who was himself claiming that his constitutional right was infringed. However, in *Gooding v. Wilson,* 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972), in *Lewis v. New Orleans,* 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974), and in *Plummer v. Columbus,* 414 U.S. 2, 38 L. Ed. 2d 3, 94 S. Ct. 17 (1973), the United States Supreme Court held that laws prohibiting certain speech could be challenged by the defendants, even though their own conduct was not protected, because the language of the laws in question covered constitutionally protected speech as well as speech which could, properly, be punished. It is at once apparent that the court in these cases was concerned with laws which directly pertained to speech, an expressly protected activity. *See also Grayned v. Rockford, supra; cf. Doran v. Salem Inn, Inc., supra.*

---

*Schacht v. United States,* 398 U.S. 58, 26 L. Ed. 2d 44, 90 S. Ct. 1555 (1970); *Gooding v. Wilson,* 405 U.S. 518, 31 L. Ed. 2d 408, 92 S. Ct. 1103 (1972); *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973); *Hess v. Indiana,* 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973); *Cohen v. Chesterfield County School Bd.,* 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974); *Lewis v. New Orleans,* 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974); *Jenkins v. Georgia,* 418 U.S. 153, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974); *Erznoznik v. Jacksonville,* 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975); *Political Expression and Association: NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963); *Dombrowski v. Pfister,* 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965); *Assembly: Coates v. Cincinnati,* 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971); *Cox v. Louisiana, supra; Speech and Association: Baggett v. Bullitt,* 377 U.S. 360, 12 L. Ed. 2d 377, 84 S. Ct. 1316 (1964).

The Supreme Court went beyond its prior holdings in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975), in granting standing to parties whose constitutional rights were not involved, since the ordinance did not purport to regulate speech, or any other First Amendment rights. The only case which the Court cited in support of its grant of standing was *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). That case involved an anti–noise ordinance which prohibited a person on grounds adjacent to a school building from willfully making a noise or diversion that disturbed or tended to disturb the peace or good order of the school session. The ordinance, although it regulated speech, was upheld.

Unfortunately, the Court in *Doran v. Salem Inn, Inc., supra,* did not take note of the fact that the ordinance did not purport to regulate speech or other protected conduct, and that those cases which had previously allowed a challenge by a person whose own conduct was not protected involved regulations of that nature. From a reading of the opinion, one cannot ascertain whether the departure from the normal practice was intentional or inadvertent.

■ The Seattle ordinance does not purport to regulate speech, but rather regulates conduct. That such conduct might, in a given context, be found to be so connected with the expression of ideas as to be included within the constitutional protection, does not convert the ordinance from one regulating conduct to one regulating speech. None of the authorities cited by the appellants go so far as they would have the court go in this case. The Supreme Court expressly recognizes that there is a difference between statutes regulating conduct and those regulating speech and has said, in *United States v. O'Brien,* 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968), that not every form of conduct must be treated as protected speech, for

[w]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

Since the ordinance here in question is manifestly directed at conduct and does not purport to regulate the expression of ideas, and indeed expressly makes allowance for the prohibited conduct in a context of such expression, and in the absence of any showing that any person has a right to present a public theatrical production involving breast exposure outside a threatre or museum, we must reject the appellants' contentions that this ordinance prohibits constitutionally protected speech.

The appellants next argue that the conduct prohibited here was not obscene, as that word has been defined by the United States Supreme Court, and cite a number of cases which have held that the expression of ideas cannot be forbidden on the ground that the material is offensive, unless it is in fact obscene. Since there is no contention here that the appellants were engaged in any kind of communicative or expressive activity, these cases have no application.

■ The appellants further argue that their conduct was not lewd, within the common–law meaning of that word. The legislative body included the "intentional exposure of

female breasts" within its definition of "lewd conduct." The general rule is that the legislature may define a word, giving it a broader meaning than its ordinary meaning. 1A C. Sands, *Statutes and Statutory Construction* § 20.08 (4th ed. 1972); 73 Am. Jur. 2d *Statutes* § 224 (1974).

We have recognized this rule many times. Among the cases are *Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 505 P.2d 453 (1973); *Garrison v. State Nursing Bd.,* 87 Wn.2d 195, 550 P.2d 7 (1976); and *State v. Roadhs,* 71 Wn.2d 705, 430 P.2d 586 (1967).

The validity of legislative definitions is a question which usually arises in the context of statutory interpretation. *See* 1A. C. Sands, *Statutes and Statutory Construction* §§ 20.08, 27.02 (4th ed. rev. 1972), and 2A C. Sands, *Statutes and Statutory Construction* § 47.07 (4th ed. rev. 1973). There is no ambiguity in the law before us, nor is it contended that any such exists. Looking at the ordinance as a whole, it is evident that one of the purposes of the adoption of section 12A.12.150 was to correct the ambiguity which characterized its predecessor, which read:

> It is unlawful for any person to appear in a state of nudity, or in any indecent or lewd dress, or make any indecent exposure of his person, or to expose his private parts to public view, or be guilty of any lewd act or behavior in any place exposed to public view. (Ord. 16046 § 21; May 23, 1907) [§ 12.11.220.]

It will be seen that the prior law, having no statutory definition of the words "nudity," "lewd," "indecent," and "lewd acts or behavior," was open to a charge of vagueness. Obviously it was not distinguished by the definiteness which the United States Supreme Court has said is necessary in a criminal law.[7] *United States v. Sullivan,* 332 U.S. 689, 92 L. Ed. 297, 68 S. Ct. 331 (1948). We have adhered to that principle. In *State v. Martinez,* 85 Wn.2d 671, 538

---

[7] It is of interest that the ordinance in which this section appears was adopted for the express purpose, among others, of clarifying the law pertaining to criminal conduct. The preamble to ordinance 102843 reads:

> WHEREAS, existing criminal ordinances of The City of Seattle are in part obsolete, duplicative, incomplete and inconsistent with modern sociological needs; and

P.2d 521 (1975), we found an ordinance which failed to define "loitering" void for vagueness. We said there that the due process clause requires that citizens be given fair notice of what is forbidden.

It is not suggested that section 12A.12.150 falls short of that requirement. Rather the contention is that the coverage of the statute is so broad that it includes conduct which does not come within the common–law meaning of the word "lewd." In other words, the appellants would have the court require the legislative body to define its terms, when enacting a law but at the same time restrict the definition to that which the court would adopt, were it to enact the statute. No authority is cited for such a proposition, and we think it contrary to the fundamental principle that the power to define criminal offenses resides in the legislative branch. 22 C.J.S. *Criminal Law* §§ 11, 15 (1961); 21 Am. Jur. 2d *Criminal Law* § 14 (1965). Where the legislature has defined an offense, its definition supersedes the common law. *State v. Benson*, 144 Wash. 170, 257 P. 236 (1927).

The fact that the legislative body may conceivably have been somewhat harsh in characterizing the conduct which it saw fit to proscribe as lewd rather than merely indecent, does not erase the fact that the conduct itself is described with sufficient clarity to give fair warning of what is forbidden. That is the description which due process requires. *State v. Galbreath*, 69 Wn.2d 664, 419 P.2d 800 (1966).

Of course, a legislative definition may be so arbitrary that it operates to deny constitutional rights or otherwise run afoul of constitutional prohibitions. As the Supreme Court

---

WHEREAS, it is necessary to provide a modern, fair, understandable, comprehensive and effective criminal code; and

WHEREAS, it is desirable to remove certain regulatory measures from the field of municipal criminal law and to distinguish between crimes and non–criminal violations of municipal law; and

WHEREAS, the Seattle–King County Bar Association has, pursuant to an agreement with the City of Seattle authorized in Ordinance 99482, completed a revision of the criminal code and the Seattle City Council has considered said revision and being fully advised . . .

of Errors of Connecticut said in *United Interchange, Inc. v. Spellacy,* 144 Conn. 647, 136 A.2d 801 (1957), the rule does not prevent a court, when the constitutionality of a statute is attacked, from examining the act to see whether it logically and fairly describes that which it purports to define. There the legislative body included, within the definition of "real estate business," the business of publishing a paper which specialized in real estate advertising, in order to subject it to requirements which were legitimately imposed upon real estate brokers and salesmen but bore no reasonable relation to the publishing business. The court held that the attempt to impose such onerous and irrational burdens upon a legitimate business violated the constitutional requirements of due process and equal protection of the laws.

In *Central Television Serv., Inc. v. Isaacs,* 27 Ill. 2d 420, 189 N.E.2d 333 (1963), a legislative classification of television repairmen as "retailers of parts," for the purpose of imposing a retail sales tax upon their activities, which tax was not imposed upon repairmen generally, was held unconstitutional as violative of the requirement that taxes be uniform as to the class upon which it operates.

It will be seen that in these cases, the courts struck down legislative definitions which resulted in the imposition of burdens which could not have been imposed had the activities in question been correctly defined. We have, by dictum, taken note of the principle involved, in *State v. Zornes,* 78 Wn.2d 9, 20, 475 P.2d 109 (1970), where we said:

> It is doubtful whether a legislative declaration contrary to all the evidence can be sustained as constitutional, if its effect is to deny to a defendant equal treatment under the law.

There is no suggestion here that the City was without power to punish the conduct of which the appellants were found guilty, or that, by defining it as lewd, the council attempted to impose upon it a punishment which could not otherwise have been prescribed.

In another case, *People v. Smith,* 246 Mich. 393, 224 N.W. 402 (1929), the legislature had passed an act which, according to its title, was designed to define and punish the crime of pandering. A challenge to the statute was waged upon the ground that the title was too narrow to include all of the conduct proscribed in the act. The court found that the word pandering was one of narrow meaning, within the common understanding. Therefore, it held, the title was not sufficient to meet the constitutional requirement that the subject matter of a bill be embraced within it.

The principle involved in that case has no application here. Const. art. 2, § 19, applies only to the legislature, and it is not contended otherwise.

In any event, the conduct described in the Seattle ordinance is within the ordinary meaning of the word "lewd." The word necessarily invites subjective evaluation. What to one person may be lewd may be to another entirely innocent. That appears to be the reason that the legislative body here did not see fit to leave to judicial definition the conduct forbidden.

*Webster's Third New International Dictionary* 1301 (1966) gives the following definition:

a : sexually unchaste or licentious: DISSOLUTE, LASCIVIOUS b : suggestive of or tending to moral looseness : inciting to sensual desire or imagination : INDECENT, OBSCENE, SALACIOUS (moralists looked upon it as a lewd distraction—Lewis Mumford) (loud, lewd dissonances from the . . . orchestra in the pit—TIME) (the hawk stood . . . with his lewd purple tongue lolling from his open beak—Liam O'Flaherty)

Among the definitions are "suggestive of or tending to moral looseness—inciting to sensual desire or imagination." The appellants' conduct can be fitted into these descriptions, even though many persons, including some judges, might find their conduct neither suggestive nor inciting. It is enough to say that the legislative body of the City of Seattle determined that a sufficient number of citizens would find the exposure of female breasts to be lewd,

within the broad definition of the word, to warrant its prohibition for the preservation of the public morals, peace and good order.

We are not faced with the necessity of construing the intent of the legislative body when it used the word "lewd." It has defined the word for us. Accordingly, cases cited by the appellants, in which courts have been called upon to interpret the legislative intent with respect to the word where no statutory definition is provided, are not determinative. In such cases, the courts naturally give the law in question a strict construction in favor of the accused, in compliance with the established doctrine.

Cases which the appellants cite interpreting statutes which use the word "lewd" without defining it are therefore not in point. *In re Smith,* 7 Cal. 3d 362, 497 P.2d 807, 102 Cal. Rptr. 335 (1972), *Wainwright v. Procunier,* 446 F.2d 757 (9th Cir. 1971), and *In re Giannini,* 69 Cal. 2d 563, 446 P.2d 535, 72 Cal. Rptr. 655 (1968), all involved the interpretation of California Penal Code § 314, which punished "wilful and lewd exposure." *People v. Gilbert,* 72 Misc. 2d 75, 338 N.Y.S.2d 457 (N.Y. City Crim. Ct. 1972), also involved a statute punishing any person who "wilfully and lewdly exposes his person . . ." Unlike those statutes, the Seattle ordinance under consideration here does not make lewdness a separate element of the offense. Rather, it *defines* as lewd the intentional exposure of one's female breasts in public.

Of greater relevance here is the fact that in the sequel to the New York case, *People v. Gilbert,* 72 Misc. 2d 795, 339 N.Y.S.2d 743 (N.Y. City Crim. Ct. 1973), the same judge held that the offense of "exposure of the female" was an offense included within the greater offense of "public lewdness" and sustained the defendant's conviction upon this count. The defendant in that case had exposed her entire body on a public beach but had not made any lewd gestures or movements. "Exposure of the female" as defined by the New York law was the intentional exposure of female

breasts. As the court construed these two laws, they forbade the mere exposure of female breasts, but did not forbid exposure of the genitals of either male or female unless the exposure was accompanied by lewd gestures or movements. Recognizing the anomalous result of his interpretation, the judge suggested that the legislature might see fit to correct it.

The New York court also held that the law forbidding "exposure of the female" was constitutional, against contentions that it denied due process and equal protection.

It suggested that since the exposure of female breasts is not so serious an offense as others prohibited in this section, the council acted arbitrarily when it classed these offenses together. In view of the fact that RCW 35.22.280(36), authorizing the city to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits, provides the same punishment for all violations of such regulations, we cannot see merit in this theory. Pursuant to this statute, the City of Seattle, in section 12A.01.090 of the ordinance, which covers all criminal conduct, as well as other violations, has provided that offenses of a criminal nature shall be punished by a fine of not more than $500 and/or imprisonment in the city jail for not more than 6 months. Thus all such offenses are of the same class, though they range in seriousness from disorderly conduct to assault.

The seriousness of the offense is considered by the trial judge in imposing sentence within the confines of the legislative prescription. The imposition of fines of only $100 reflects the lower court's proper exercise of discretion in evaluating the seriousness of the offenses charged here.

Finding no constitutional flaw in the ordinance, and the violations being admitted, we affirm the judgment.

WRIGHT, C.J., and HAMILTON, STAFFORD, and HICKS, JJ., concur.

WRIGHT, C.J. (concurring)—I concur in the majority opinion and have signed the same. I do, however, wish to comment on one aspect of this matter. Mr. Justice Utter in his dissent referred to the use of the word "lewd". I fully agree with him that this word is unfortunate in that it will brand these young women with an ill deserved stigma. Certainly the use of that word will bring to the minds of persons learning of the conviction visions of something far different from what actually happened.

The legislative body had clear authority to forbid the conduct involved in this litigation. The legislative body had clear authority to define the words used in its enactment. *John H. Sellen Constr. Co. v. Department of Revenue,* 87 Wn.2d 878, 558 P.2d 1342 (1976).

While the use of the word "lewd" is unfortunate, that relates to the wisdom of a legislative enactment. It is not a judicial function to pass upon the wisdom of legislative enactments. *State v. Carey,* 4 Wash. 424 (1892); *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965); *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 P. 1047 (1908).

Another problem seems involved in ordinance No. 12A.12.150. In this case there is no question the Seattle Arboretum is a public place. The ordinance, however, does contain the language "in a public place or at a place and under circumstances where such act could be observed by any member of the public." It is not difficult to predict that at some future time the quoted language may come under question by a party with standing to challenge the same.

HICKS, J., concurs with WRIGHT, C.J.

UTTER, J. (dissenting)—I cannot agree with the majority. It applies general rules which have no application in the context of the facts in this case and misconstrues the cases it cites as supporting its conclusions. The facts presented do not constitute a crime under any reasonable interpretation of the ordinance in question. The City of Seattle has the power to enact an ordinance prohibiting public nudity.

It must exercise its power, however, through an ordinance which does not discriminate or arbitrarily exaggerate the severity of the crime. It is not the definition found in the dictionary of "lewdness" which controls in this case, but rather the City's act of equating public exposure of breasts, without requiring an intent to excite a sexual response in the beholder or conduct which would naturally appeal to the viewer's prurient interests, with such other subsections of the ordinance which forbid public fondling of the genitals, masturbation, and sexual intercourse.

If the convictions of these students are allowed to stand, these young women will carry with them throughout their lives a record of conviction for lewd conduct, yet, everyone concerned concedes that, but for the arbitrary definition of that crime which seems to have been adopted by the City of Seattle, the appellants neither acted nor intended to act in a "lewd" manner as that term is used in reference to the other acts specified. Such a criminal record, and the implication of a disposition to commit acts of extreme vulgarity which necessarily accompanies it, may do these appellants incalculable harm in future years.

The majority's use of the cases of *United Interchange, Inc. v. Spellacy,* 144 Conn. 647, 136 A.2d 801 (1957) and *Central Television Serv., Inc. v. Isaacs,* 27 Ill. 2d 420, 189 N.E.2d 333 (1963), to support its position is particularly inappropriate. It suggests these cases support the proposition that courts may strike down legislative definitions which result in the imposition of burdens which could not have been imposed by the legislative body had the activities in question been correctly defined. The conduct of appellants in this case could have been prohibited if correctly categorized and the *Central Television* case is directly in support of that proposition. In *Central Television,* the legislature had defined the occupation of "retailer" to include television servicemen. A tax was levied upon all persons engaging in the occupation of "retailer." Television servicemen challenged the law classifying them as persons engaged

in the occupation of retailer. Everyone conceded that television servicemen could be subjected to an occupational tax, but the servicemen contended that because they were not retailers they could not be subjected to that occupational tax. As the court stated, "The State contends plaintiffs are engaged in a taxable occupation—and plaintiffs concede their occupation to be taxable—but not under an act taxing the business of engaging in retail sales." *Central Television Serv., Inc. v. Isaacs, supra* at 427.

The court held that the television servicemen could not be taxed under the "Retailers' Occupation Tax" because the definition of "retailer" was arbitrary and capricious in its inclusion of the servicemen. The court also stated that it is impermissible for the legislature to attempt to convert an activity into something it is not by adopting a definition which is unreasonable. Just as the occupation of television serviceman could be taxed in that case in an amount identical to that applied to retailers, women exposing their breasts in public may be convicted equally if that act is properly defined. However, television servicemen under the *Central Television* case could not be taxed as retailers because the definition including servicemen within that classification was found to be arbitrary and unreasonable. Similarly, women exposing their breasts in public cannot be convicted of lewd conduct because the definition including exposure of breasts within the classification of lewd conduct is an arbitrary definition and an unreasonable classification. The case cited by the majority is in fact direct support for the position I take. Similarly, in the *United Interchange* case the court indicates some regulation of the activity forbidden could have been undertaken and that the primary vice was the method of definition rather than the attempt to regulate. That case as well supports the position of the dissent, not the majority.

The majority's use of *People v. Gilbert,* 72 Misc. 2d 75, 338 N.Y.S.2d 457 (N.Y. City Crim. Ct. 1972) and *People v. Gilbert,* 72 Misc. 2d 795, 339 N.Y.S.2d 743 (N.Y. City Crim. Ct. 1973), is particularly inappropriate. In the second case,

the defendant was convicted of the offense of "exposure of a female", a separate crime not in any way a part of the statute on lewdness. The court held that exposure of a female is a lesser included offense of public lewdness. It so held because to prove exposure of a female the state had to prove every element of public lewdness except the central and fundamental requirement of the lewdness statute, which was that the conduct must be lewd. The defendant had been acquitted of public lewdness in the first case because the prosecution had failed to prove the defendant's exposure had been lewd.

At least two courts have held that mere public nudity, without more, cannot provide the basis for a lewd conduct conviction. *In re Smith,* 7 Cal. 3d 362, 497 P.2d 807, 102 Cal. Rptr. 335 (1972), expressly holds that a defendant who simply sunbathed in the nude, in the absence of additional conduct intentionally directing attention to his genitals for sexual purposes, did not lewdly expose himself. Similarly, it was held in *McKinley v. State,* 33 Okla. Crim. 434, 436, 244 P. 208 (1926), that an elderly man who wandered about his home naked, in full view of his neighbors, was not guilty of lewdly exposing his person, the court holding that lewd exposure "imports more than a negligent disregard of the decent proprieties and consideration due to others." While in both these instances the defendants could constitutionally have been said to have violated a more narrowly drawn ordinance, each was held to be not guilty of lewd conduct. I would apply similar principles here.

The ordinance at issue declares any person to be guilty of "lewd conduct" who "intentionally performs any lewd act in a public place" and defines "lewd act" as including, among other things, "an exposure of one's genitals or female breasts . . ." Both the legal and lay definitions of "lewd conduct" consistently require more than the exposure of the body. This court has recently held the word "lewd" is interchangeable with "obscene" and noted that the dictionary definition of the term includes such other terms as "lascivious", "dissolute", or "salacious", *Seattle v.*

*Marshall,* 83 Wn.2d 665, 521 P.2d 693 (1974). Each of these terms is intended, given its ordinary meaning, to describe conduct calculated to arouse sexual desire or excite prurient interests. Courts of other jurisdictions have adopted similar definitions, the one most frequently set forth being that the term "lewd" means "given to unlawful indulgence of lust, eager for sexual indulgence . . ." *State v. Jones,* 2 Conn. Cir. Ct. 698, 700, 205 A.2d 507 (1964); *Martin v. State,* 534 P.2d 685 (Okla. Crim. App. 1975); *Chesebrough v. State,* 255 So. 2d 675 (Fla. 1971). *See generally* 25 *Words and Phrases,* "Lewd" (1961). The uncontroverted facts of this case, which are set forth at length in the majority and dissenting opinions, clearly establish that the appellants are not guilty of lewd conduct under any of these definitions. It is equally clear that their actions were not as serious as those set forth by other subsections of the ordinance such as fondling of the genitals, masturbation or public acts of sexual intercourse.

As the majority recognizes, courts are required to read a statute in the "'animating context of well-defined usage'". *State v. Dixon,* 78 Wn.2d 796, 805, 479 P.2d 931 (1971). Criminal statutes must be narrowly construed in favor of the defendant. *State v. Bell,* 83 Wn.2d 383, 518 P.2d 696 (1974). Further, where the overall meaning of a criminal statute indicates a particular association of offenses, the act should be construed against the inclusion of an offense outside the scope of the overall meaning of the act. *State v. Chase,* 50 Del. 383, 131 A.2d 178 (1957).

Given these definitions and rules of statutory construction I conclude it was the intent of the city council, in enacting this ordinance, to prohibit the exposure of the female breasts only when such an act was done in a lewd manner, that is, in a manner intended to excite a sexual response in the beholder or which naturally would appeal to the viewer's prurient interests. The conduct of the appellants is therefore not prohibited by the ordinance under which they were charged.

The majority asserts that cases such as *In re Smith, supra,* and *McKinley v. State, supra,* are distinguishable in that they involve statutes utilizing the word "lewd" without further definition, while the ordinance here at issue purportedly makes simple public nudity lewd in and of itself. The opinion relies, in making this distinction, upon a passage from Sands' treatise on statutory construction which states a legislative definition is binding upon the courts. The majority, however, fails to take note of the sentence *immediately following* the quoted passage upon which it relies. That sentence states:

> If, however, the definitions are arbitrary and result in unreasonable classifications or are uncertain, then the court is not bound by the definition.

1A C. Sands, *Statutes and Statutory Construction* § 20.08 (4th ed. 1972). It is this principle of construction which is applicable here. If the "exposure of the female breasts" provision is not read as requiring that the exposure take place in a lewd manner, it is both an arbitrary definition and an unreasonable classification in light of the other types of conduct enumerated in the ordinance and need not be considered conclusive by this court.

If read literally, the ordinance clearly prohibits many types of conduct which cannot logically be said to have been within the City's interest to prohibit. See majority opinion footnote 5. Reading the statute as requiring a *lewd* exposure eliminates all of these difficulties.

I agree with the majority's assertion that the City has the power to regulate the type of conduct engaged in by these defendants. However, it must do so in the context of an ordinance which is both constitutional and places the crime in a logical classification. The power of the City to attach any label it wishes to conduct which it has the power to regulate must be exercised within the bounds of proper classification. I dissent.

BRACHTENBACH and DOLLIVER, JJ., concur with UTTER, J.

HOROWITZ, J. (dissenting)—I agree with Utter, J., that the lewd conduct ordinance section 12A.12.150(1)(a), (2), (4), which characterizes as lewd the exposure of female breasts in a public place, or at a place and under circumstances where such act could be observed by any member of the public, in law is arbitrary, capricious and violative of equal protection, rendering the dismissal of the charge mandatory. I also believe the ordinance is unconstitutionally overbroad, in violation of the First Amendment, for the reasons discussed herein. I agree with the majority, however, that it is not invalid under the state's equal rights amendment. Const. art. 31 (amendment 61).

To be violative of equal rights a statute or ordinance must address some matter or conduct which is substantially identical in both sexes. A regulation or proscription applied only to members of one sex, then, would be unlawful discrimination based on sex.

When, however, the matter regulated or prohibited relates to a physical characteristic peculiar to one sex, and not common to both, the discrimination may be valid. *See General Elec. Co. v. Gilbert,* 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, 409 (1976). *Geduldig v. Aiello,* 417 U.S. 484, 496 n.20, 41 L. Ed. 2d 256, 94 S. Ct. 2485 (1974). *See also* Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871, 893 (1971), which states the matter well as follows:

> The fundamental legal principle underlying the Equal Rights Amendment, then, is that the law must deal with particular attributes of individuals, not with a classification based on the broad and impermissible attribute of sex. This principle, however, does not preclude legislation (or other official action) which regulates, takes into account, or otherwise deals with a physical characteristic unique to one sex. In this situation it might be said that, in a certain sense, the individual obtains a benefit or is subject to a restriction because he or she belongs to one or the other sex. Thus a law relating to wet nurses would cover only women, and a law regulating the donation of

sperm would restrict only men. Legislation of this kind does not, however, deny equal rights to the other sex. So long as the law deals only with a characteristic found in all (or some) women but *no* men, or in all (or some) men but *no* women, it does not ignore individual characteristics found in both sexes in favor of an average based on one sex. Hence such legislation does not, without more, violate the basic principle of the Equal Rights Amendment.

This exception was noted in *Darrin v. Gould,* 85 Wn.2d 859, 872 n.8, 540 P.2d 882 (1975), but was not applicable. In that case we held a regulation prohibiting girls from playing interscholastic contact football on boys' teams violated the equal rights amendment. The regulation was defective because it discriminated solely on the basis of gender. Since boys and girls in that case were found capable of equal performance in football, to exclude only girls from play was held clearly to discriminate on the basis of sex. The Seattle ordinance in question here, however, regulates not on the basis of gender, but on the basis of possession of a physical characteristic, one which is unique to women, *i.e.,* female breasts.

It is contended that female breasts are not unique to females, that some men have breasts. For purposes of this dissent, we may assume this is true. However, the number of such men in our society is on the whole very, very small. In popular understanding, female breasts are a characteristic of the female, not of the male. In interpreting the reach of the equal rights amendment, we should interpret that amendment in a manner that meets a common understanding. The understanding of an elite group of professionals that a small group of men have such breasts is not the common understanding of the characteristic, and should not guide our application of the amendment.

While the ordinance prohibiting exposure of female breasts in public does not violate the equal rights amendment, it does violate the First Amendment. The language of the ordinance is so broad that it prohibits conduct which is

symbolic speech clearly protected by the First Amendment. It is therefore unconstitutionally overbroad and void.

An ordinance or legislative act is overbroad if its reach extends beyond speech or conduct legitimately subject to regulation and prohibits or suppresses constitutionally protected speech or conduct. *United States v. Robel,* 389 U.S. 258, 266, 19 L. Ed. 2d 508, 88 S. Ct. 419 (1967). The Seattle ordinance suppresses protected speech by prohibiting nudity in dramatic performances taking place in any public place other than a theater or museum. City of Seattle ordinance No. 12A.12.150. Indeed, the ordinance reaches even further to prohibit these performances in any private place which might be within the view of a member of the public. City of Seattle ordinance No. 12A.12.150(2). Nudity in some dramatic performances is protected First Amendment symbolic speech, as the majority concedes. By limiting severely the places in which such productions may be performed, the ordinance on its face suppresses constitutionally protected speech. Such overbreadth is fatal to the validity of the ordinance.

It is true that the defendants before us here do not claim to have been engaged in a dramatic production or other First Amendment expressive conduct. They do not claim that First Amendment requirements prevent the City from prohibiting their conduct. Nor do they argue the City did not intend to prohibit such conduct. With regard to the validity of the ordinance under which they are charged, however, it is irrelevant whether the defendants were engaged in protected speech or not. The First Amendment question is whether the ordinance under which the defendants are charged is valid. If it is overbroad—and it clearly is—it is invalid, and may not be used to punish any conduct whatsoever. The charges against the defendants must then be dismissed.

The reason for such an outcome is compelling. The very existence of overbroad laws is an intolerable burden on cherished freedoms of speech and expression. Thus, even those whose conduct may constitutionally be punished are

allowed to challenge the validity of an ordinance or statute on the basis of overbreadth, to ensure that the defective law will not continue to suppress free speech. The rule was stated in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975) (hereinafter referred to as *Doran*), a case cited and discussed by the majority.

> We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in *Grayned v. City of Rockford,* 408 U.S. 104, 114 (1972):
>> "Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge."

Although the majority opinion appears somewhat critical of this rule, it is nonetheless binding on this court under the supremacy clause. U.S. Const. art. 6. The defendants here may therefore challenge the Seattle ordinance for overbreadth.

The result is not inconsistent with our own holdings. Discussing the problem of an ordinance which was unconstitutionally vague, this court said:

> [T]he city contends that good intentions and self-restraint of law enforcement officers will not result in unjust prosecution. This assurance, however, does not save the ordinance because "well-intentioned prosecutors . . . do not neutralize the vice of a vague law." *Baggett v. Bullitt,* 377 U.S. 360, 373, 12 L. Ed. 2d 377, 84 Sup. Ct. 1316 (1964). The law should be so drawn as to make it inapplicable to cases which obviously are not intended to be included within its terms.

*Seattle v. Drew,* 70 Wn.2d 405, 409–10, 423 P.2d 522 (1967). This reasoning is equally applicable to an ordinance which is overbroad. Where constitutionally protected rights of free speech and expression are concerned, it is vital that a regulation be precisely and narrowly drawn if a challenge on the basis of overbreadth is to be avoided. *See NAACP v.*

*Button,* 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963).

The Seattle ordinance is defective because it affects constitutionally protected dramatic performances by discriminating on the basis of their content, *i.e.,* nudity, and suppressing those performances which contain nudity. Those performances, under the ordinance, may take place only in theaters and museums. It is contended that this provision for expressive performances is adequate protection for First Amendment freedoms. I disagree. It may be, as the majority argues, that the City of Seattle has taken care to "exempt from [the ordinance's] provisions those artistic and theatrical performances which might conceivably involve the exercise of constitutional freedoms." Even so, the city council had failed in this ordinance because it is not sufficiently narrowly drawn.

It has been argued that the word "theatres" is broad enough to include any place where a dramatic production of a type protected by the First Amendment would take place. Such a definition is inconsistent with the structure of the ordinance, and goes beyond the common meaning of the word. A *common definition which is appropriate for use in* construing this ordinance is found in Black's Law Dictionary 1647 (4th ed. 1968):

> Theater. Any edifice used for the purpose of dramatic or operatic or other representations, plays, or performances, for admission to which entrance–money is received, not including halls rented or used occasionally for concerts or theatrical representations.

*See also* 2 *Bouvier's Law Dictionary* 3265 (8th ed. 1914). This common meaning, the meaning understood by the ordinary citizen, must control our interpretation of the ordinance. *New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 47, 541 P.2d 989 (1975). The broad meaning suggested by the majority, on the other hand, eradicates the distinction between a theater and a theatrical performance. This is not the common understanding of the word "theater." It is also inconsistent with the structure of the ordinance. To include

an open public park in the definition of a theater, for example, would contravene the prohibition against nudity at a place where a member of the public could observe it. Furthermore, the pairing of museums and theaters in the exception clause suggests an intent to except buildings, not places, where dramatic productions or cultural events are most commonly held. A consistent and proper construction of the ordinance, then, is that it prohibits dramatic performances containing nudity in any place outside a museum or structure of a type commonly understood to be a theater.

The majority believes such a restriction is proper. There is no showing, they argue, that First Amendment expression containing nudity must be permitted in parks or other public places. They appear to ignore the fact that First Amendment jurisprudence is replete with United States Supreme Court decisions guaranteeing freedom of speech in such public places, and denying governments the right to restrict or prohibit such speech on the basis of its content. The majority does not contend this ordinance prohibits only obscenity or pornography, which are not protected by the First Amendment. *See Miller v. California,* 413 U.S. 15, 23, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 54, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973). They do not deny that protected First Amendment expression is regulated by the ordinance. We need only quote, then, a passage from *Hudgens v. NLRB,* 424 U.S. 507, 520, 47 L. Ed. 2d 196, 96 S. Ct. 1029 (1975):

> For while a municipality may constitutionally impose reasonable time, place, and manner regulations on the use of its streets and sidewalks for First Amendment purposes, see *Cox v. New Hampshire,* 312 U.S. 569; *Paulos v. New Hampshire,* 345 U.S. 395, and may even forbid altogether such use of some of its facilities, see *Adderley v. Florida,* 385 U.S. 39; what a municipality may *not* do under the First and Fourteenth Amendments is to discriminate in the regulation of expression on the basis of the content of that expression. *Erznoznik v. City of Jacksonville,* 422 U.S. 205. "[A]bove all else, the First Amendment means that government has no power to

restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95.

The majority would discriminate in the regulation of expression in artistic performances on the basis of its content, *i.e.,* nudity, by confining it to only a few of many available public fora. That discrimination is impermissible. In this regard the majority opinion misconstrues the significance of *Erznoznik v. Jacksonville,* 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975) (hereinafter referred to as *Erznoznik*).

In *Erznoznik* the court held unconstitutional on its face an ordinance prohibiting the showing of films containing nudity by a drive–in theater where the screen is visible from a public street or other public place.[8] The City of Jacksonville's argument that it may protect its citizens from unwilling exposure to material which may be offensive was flatly rejected. A municipality may protect individual privacy by reasonable regulations which are applicable to all speech regardless of content. *Erznoznik v. Jacksonville, supra* at 209. The power of a municipality to selectively prohibit certain kinds of speech in public areas on the grounds they are more offensive than others, however, is strictly limited.

> Such selective restrictions have been upheld only when the speaker intrudes on the privacy of the home, see *Rowan* v. *Post Office Dept.,* 397 U. S. 728 (1970), or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure. *See Lehman* v. *City of Shaker Heights,* [418 U.S. 298 (1974)].

(Footnotes omitted.) *Erznoznik v. Jacksonville, supra* at 209. The court explained further:

> [T]he Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener

---

[8]The similarity between the reach of the Jacksonville ordinance, to nudity visible from a public place, and that of the Seattle ordinance, to nudity visible at any public place (except a theater or museum) and by any member of the public, is striking.

or viewer. Rather . . . the burden normally falls upon the viewer to "avoid further bombardment of [his] sensibilities simply by averting [his] eyes." *Cohen v. California* [403 U.S. 15], at 21.

*Erznoznik v. Jacksonville, supra* at 210–11. Thus, because an unwilling viewer of nudity in films may avert his eyes, nude performances may not be banished from public parks.

The majority argues, however, that *Erznoznik* supports its view because it distinguishes "public nudity traditionally subject to indecent exposure laws" from protected expression. *Erznoznik v. Jacksonville, supra* at 211 n.7. Nudity as indecent exposure is one thing but nudity as a form of artistic expression is another. The language of the ordinance prohibits *more* than indecent exposure. It prohibits nudity as a form of artistic expression, which is constitutionally protected. For this reason the ordinance is defective. Indecent exposure may of course be prohibited by carefully written laws. This ordinance, however, is not narrow enough. It sweeps within its bounds much that may not lawfully be prohibited. It is overbroad.

The majority concedes that nudity in dramatic performances is a form of expression protected by the First Amendment. This is the inescapable conclusion to be drawn from the holdings of the United States Supreme Court in *Doran v. Salem Inn, Inc., supra* and *Erznoznik v. Jacksonville, supra.*

In *Doran* the court held that a First Amendment challenge to an ordinance prohibiting nude dancing in any public place was likely to succeed on the merits. This form of entertainment, it was noted, may be entitled to First Amendment protection under some circumstances. *Doran v. Salem Inn, Inc., supra* at 932. The court quoted with approval a passage from the lower court opinion, which cited a particular instance of protected artistic expression containing nudity:

"[T]his ordinance would prohibit the performance of the 'Ballet Africains' and a number of other works of

unquestionable artistic and socially redeeming significance." 364 F. Supp. 478, at 483.

*Doran v. Salem Inn, Inc., supra* at 933. First Amendment protection of nudity in expressive performances was emphasized in *Erznoznik.* In that case the court sustained a First Amendment challenge to an ordinance prohibiting the screening of films containing nudity in outdoor theaters on the grounds that protected speech was suppressed. *Erznoznik v. Jacksonville, supra* at 211 n.8. It is clear from these cases that nudity as a part of expressive performances is symbolic speech protected by the First Amendment.

The District Court observed, we believe correctly:

"The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in 'any public place' with uncovered breasts. There is no limit to the interpretation of the term 'any public place.' It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the 'Ballet Africains' and a number of other works of unquestionable artistic and socially redeeming significance." 364 F. Supp., at 483.

*Doran v. Salem Inn, Inc., supra* at 933.

The majority nonetheless argues that, regarding the appearance in public of women with naked breasts, a distinction must be made between ordinances regulating pure speech and those regulating conduct. The Seattle ordinance regulates conduct and thus, it is claimed, is not subject to the same First Amendment objections as is one regulating speech. This argument is patently inconsistent with the majority's recognition that dancing may be expression, and fails to recognize the basic First Amendment notion that conduct which is expression can be "akin to 'pure speech.'" *Tinker v. Des Moines School Dist.,* 393 U.S. 503, 508, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969). In other words, ideas and thoughts may be conveyed by nonspeech symbols as well as words, and those symbolic expressions are fully protected by the First Amendment. Baring of breasts in public may

be indecent exposure, or it may be an expression of ideas which is akin to speech. The latter may not be prohibited, nor confined to a few places, because of its content.

> Freedom of expression would not truly exist if the right could be exercised only in an area that a benevolent government has provided as a safe haven for crackpots.

*Tinker v. Des Moines School Dist., supra* at 513.

We emphasize once again that it is irrelevant whether the defendants before us here were engaged in protected speech or not. It may be true that the conduct in question here may be prohibited by the City of Seattle. The question we must face, however, is whether the ordinance under which the defendants are charged is valid. Because it contravenes the requirements of the First Amendment, it is not valid. The defendants may not be punished for violation of an invalid ordinance.

In summary, then, the Seattle ordinance is unconstitutionally overbroad on its face because it prohibits symbolic speech protected by the First Amendment—an objection defendants may raise here. It also violates the due process and equal protection clauses in its arbitrary and capricious characterization of the exposure of female breasts as lewd. For any one of these reasons the ordinance may not be applied to defendants and the charges should be dismissed.

UTTER, J., concurs with HOROWITZ, J.