**R.B. WILLIAMS, City Vending Co., Inc. and R.B. Management Corporation, Appellants,**

v.

**The CITY OF FORT WORTH, Appellee.**

**No. 2–87–249–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 30, 1989.

Price & Swander and Steven H. Swander, Fort Worth, for appellants.

Wade Adkins, City Atty., and Daniel M. Tartaglia, Asst. City Atty., Fort Worth, for appellee.

Before KELTNER, LATTIMORE and MEYERS, JJ.

## OPINION

KELTNER, Justice.

The issue in this appeal from a declaratory judgment is whether the trial court erred in upholding the validity of a city zoning ordinance against attacks that it violated the constitutions of the United States and Texas and also violated state law.

R.B. Williams, and others, (Williams) owned and operated a nightclub named Sinbad's. They brought this suit seeking a declaratory judgment that city zoning Ordinance No. 9957, which regulates sexually oriented businesses, is unconstitutional. The trial court entered a judgment upholding the constitutionality of the ordinance and filed extensive findings of fact and conclusions of law.

We modify the judgment of the trial court and, as modified, affirm the judgment of the trial court.

The City of Fort Worth passed a detailed zoning ordinance in 1987 which regulates sexually oriented businesses. Generally, the ordinance restricts the operation of topless bars and nightclubs located within 1,000 feet of a church, school, residential property, public park, or another sexually oriented business. Such businesses are required to conform to a number of restrictions regulating dress and other aspects of the operation. Nightclubs which are more than 1,000 feet away from such property are not subject to the same regulation.

The ordinance defines nudity as:

(9) NUDITY or a STATE OF NUDITY means less than completely and opaquely covered:

a) Human genitals, pubic region or pubic hair,

b) Human buttock,

c) Female breast or breasts below a point immediately above the top of the areola, . . .

The ordinance also contains an amortization clause. Amortization is a technique often employed in zoning ordinances which allows the property owner to recover his investment in the structures already on the affected property.

The amortization provision in the Fort Worth ordinance allowed the owners of the sexually oriented businesses one year to recover their investment. However, if the owners could demonstrate that they were not able to recover their investment within this period, they were allowed to seek an extension of the amortization period.

The ordinance was a product of several city agencies. The Fort Worth City Council initially became concerned about the effects of sexually oriented businesses and directed a study of the situation. The City Council, together with the Zoning Commission, reviewed reports and studies prepared by the City Planning Department. That department's research revealed that sexually oriented businesses generally affect the surrounding area by (1) increasing the crime rate; (2) decreasing property values; and (3) accelerating neighborhood deterioration. As a result, the City Council passed Ordinance No. 9780 in December of 1986. Thereafter, in September, 1987, Ordinance No. 9780 was amended in part and superseded in part by 9957, which is the subject of this appeal.

When Ordinance No. 9957 became effective, Williams filed an application for a permanent injunction and a petition for declaratory judgment. The City then filed a cross-claim for declaratory judgment and injunctive relief. After a trial to the court, the court denied Williams relief; but granted declaratory judgment for the City.

The trial court filed extensive findings of fact and conclusions of law including the following:

## FINDINGS OF FACT

1. Ordinance No. 9957 is a validly enacted zoning ordinance of the City of Fort Worth, Texas, designed to reduce the adverse secondary effects of certain sexually oriented businesses, as defined therein, by requiring that they be located more than one thousand (1,000) feet from churches, schools, public parks or residentially zoned property.

. . . .

3. The Zoning Commission and the City Council of the City of Fort Worth, Texas, relied on studies, maps, reports and summaries thereof compiled by the Fort Worth Planning Department to support their conclusion that sexually oriented businesses have adverse secondary effects, such as a higher incidence of crime and the lowering of property values on businesses and residences within one thousand (1,000) feet of sexually oriented businesses.

. . . .

8. Ordinance No. 9957 pertains to a substantial and important government interest.

. . . .

10. The primary purpose of Ordinance No. 9957 is to prevent the adverse secondary effects of sexually oriented businesses.

. . . .

15. There is available accessible real estate within the City of Fort Worth in

which sexually oriented businesses may operate without undue or material deprivation of access by the public.

. . . .

### CONCLUSIONS OF LAW

. . . .

3. The regulation of the location of sexually oriented businesses under Ordinance No. 9957 is an important and substantial governmental interest.

. . . .

5. The adoption of Ordinance No. 9957 is unrelated to the suppression of free expression.

6. Any incidental restriction on First Amendment freedoms resulting from the adoption of Ordinance No. 9957 is no greater than is essential to the furtherance of the substantial governmental interests furthered by the ordinance.

7. Ordinance No. 9957 is a content neutral time, place and manner regulation designed to serve a substantial governmental interest and does not unreasonably limit alternate avenues of communication.

8. Ordinance No. 9957 has as its predominant purpose the prevention of adverse secondary effects of sexually oriented businesses, such as the reduction of crime and the protection of property values and the prevention of neighborhood blight.

. . . .

11. The definition of "nudity" in Ordinance No. 9957 is not unconstitutionally overbroad.

. . . .

15. The one-year amortization period provided by Ordinance No. 9957 is not unconstitutional.

16. The Texas Alcoholic Beverage Code does not preempt home rule municipalities from further regulating the location of sexually oriented businesses under their zoning authority.

. . . .

18. Ordinance No. 9957 is a valid zoning ordinance of the City of Fort Worth which conforms to the Zoning Enabling Act.

19. Ordinance No. 9957 does not violate the rights of female topless dancers to equal protection under the law.

20. Amortization is a valid method of eliminating existing, nonconforming uses of land in Texas.

Williams challenges the ordinance on a number of constitutional grounds. In his first point of error, Williams contends that the definition of "nudity" is overbroad.

The United States Supreme Court has recognized the tension between the need for sufficiently narrow laws and the need for vast zoning powers of municipal government.

Despite the need for a comprehensive zoning framework, zoning ordinances must still pass constitutional muster. When a zoning ordinance is attacked for overbreadth, the Supreme Court has stated the ordinance must meet a two-part test. First, it must be narrowly tailored and second, it must further a substantial or important governmental interest. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671, 680 (1981).

The United States Court of Appeals for the Fifth Circuit has recently been called upon to apply this test on two zoning ordinances that closely resemble the Fort Worth ordinance. *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268 (5th Cir.1988); *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988).

In interpreting an ordinance, the Fifth Circuit recognized that topless dancing is a form of expression protected by the first amendment; however, the court also noted that sexually oriented expression does not enjoy full first amendment protection.

In applying the overbreadth test to an ordinance regulating topless dancing, the court stated:

> [N]arrow tailoring is less important when the potential for overbreadth burdens a category of speech subject to less than full first amendment protection; sexual-

ly-oriented expression falls into such a category.

*SDJ*, 837 F.2d at 1276.

■ It follows that the less protection afforded a form of expression, the broader a limitation can be without violating the first amendment.

■ The question before us is whether Ordinance No. 9957, with its definition of nudity, is narrowly tailored and furthers a substantial governmental interest.

The trial court entered extensive findings of fact and conclusions of law. In the findings and the conclusions, the trial court found and held that the ordinance fulfilled a substantial and important interest and was narrowly tailored. Further, the court concluded that any infringement upon first amendment rights was no more than was necessary to carry out the stated goals of the ordinance. Most importantly, the trial court noted that the ordinance did not attempt to ban topless dancing; rather, it only regulated topless dancing in certain areas of the city. The court also found that there were numerous places in the city where this sort of expression could be conducted without regulation.

The trial court's findings and holdings comport with the Fifth Circuit's analysis of the Dallas and Houston ordinances which are substantially similar to Ordinance No. 9957. *SDJ*, 837 F.2d 1268; *FW/PBS*, 837 F.2d 1298.

We agree with the trial court's rulings and hold that the trial court did not err in finding the definition of nudity was not overbroad. Therefore, we overrule Williams' first point of error.

■ In his second point of error, Williams contends that the trial court erred in declaring the ordinance valid because the ordinance attempts to use amortization as a technique to eliminate non-conforming uses of land. In the same point of error, Williams argues that amortization cannot be used to suppress a constitutionally-protected form of expression.

At the outset, we once again note that the Fort Worth ordinance provided a one-year amortization period. However, the ordinance also provided that if a landowner was not able to recover his investment within that time period, the owner could apply for a longer amortization period. The reason is not clear from the record why Williams did not avail himself of this extension.

The Texas Supreme Court has approved amortization as a valid method of forcing property owners to comply with zoning restrictions. *City of University Park v. Benners*, 485 S.W.2d 773, 777–78 (Tex. 1972), *cert. denied*, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973). Amortization has the effect of forcing property owners to either conform or move. The supreme court, in approving amortization, recognized that amortization is within the police powers of a municipality. *Id.* at 778.

The court further explained that amortization is acceptable because property owners do not acquire a constitutionally-protected and vested right in property use once commenced or in zoning classifications once made. *Id.* Additionally, one of our sister courts of appeals has held that there is no constitutionally-protected or vested right to operate a sexually oriented business. *City of Houston v. MEF Enterprises, Inc.*, 730 S.W.2d 62, 63 (Tex.App.— Houston [14th Dist.] 1987, no writ).

Therefore, we hold that amortization is a valid and constitutional method of enforcing zoning regulations. As a result, we reject Williams' argument that amortization may not be used in the Fort Worth ordinance.

■ Williams next contends that amortization may not be used to suppress a form of protected expression such as topless dancing. Although Williams disguises this argument as an attack on amortization, his argument actually focuses on freedom of expression. Specifically, Williams argues the ordinance cannot be applied to existing businesses, such as his, in the same manner that it is applied to new businesses. Instead, he argues that his business and other existing businesses will be forced to close because the available sites for relocation are unsuitable.

In this regard, Williams contends that the areas available for relocation are not commercially suitable. The Fifth Circuit recently addressed this point and held relocation sites need not be commercially viable; they need only be available. *See SDJ*, 837 F.2d at 1276–77. We agree with the reasoning of the Fifth Circuit.

More importantly, the trial court entered a finding of fact that there is ample, accessible, and available real estate within the city for the operation of sexually oriented businesses. This land is available in all stages of development and easily accessible by freeways, highways, and roads. Williams does not directly attack these findings of fact and therefore, we take them at face value and reject Williams' contentions. Williams also contends the public's access to topless dancing will be dramatically reduced by the ordinance. He suggests that the practical effect of the ordinance will be that clubs unable to relocate will simply close. Contrary to Williams' arguments, the trial court entered a finding of fact that there were potential sites available for relocation and the public would not be denied access to such entertainment.

In summary, we are not persuaded by Williams' arguments. The trial court entered findings of fact addressing all of Williams' contentions, which found facts contrary to Williams' position. Williams does not attack the findings of fact and instead chooses to ignore them and focus upon his opinion on the effects of the ordinance. We disagree with Williams' arguments, and overrule his second point of error.

■ In his third point of error, Williams argues that the ordinance violates the Texas Constitution because the distance restrictions promulgated by the City Council surpass the authority granted by the Zoning Enabling Acts. *See* TEX.LOCAL GOV'T CODE ANN. secs. 211.001—211.013 (Vernon 1988). Williams admits that the Local Government Code gives a municipality the authority to divide a city into zones and regulate the use of buildings within such zones. However, Williams contends the code does not grant a municipality the power to provide distance restrictions.

We disagree. The Local Government Code specifically provides municipalities the power to include distance regulations for sexually oriented businesses. TEX.LOCAL GOV'T CODE ANN. sec. 243.-006(a)(1), (2) (Vernon 1988). The statute provides in pertinent part:

(a) The location of sexually oriented businesses may be:

(1) restricted to particular areas; or

(2) prohibited within a certain distance of a school....

*Id.*

Additionally, state and federal courts have held that municipalities may use distances as an effective method of zoning. *See Young, Wilkinson & Roberts v. City of Abilene*, 704 S.W.2d 380, 382 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Olmos Realty Co. v. State*, 693 S.W.2d 711, 714 (Tex.App.—San Antonio 1985, no writ); *SDJ*, 837 F.2d at 1276; *FW/PBS*, 837 F.2d at 1302–03.

As a result, it is clear that the City has the authority to incorporate distance restrictions in its zoning ordinances. We overrule the third point of error.

■ In his fourth point of error, Williams contends the ordinance violates the Equal Rights Amendment of the Texas Constitution, because the ordinance includes a gender-based classification. Specifically, Williams argues that the ordinance only regulates exposure of female breasts but not male breasts and, therefore, unconstitutionally discriminates against female topless dancers and proprietors of clubs featuring female topless dancers.[1]

---

1. We emphasize that, in the discussion which follows, we are considering exposure of male and female breasts solely in the context of topless performers in nightclubs, but not in the context of acceptable apparel at public swimming pools, gyms, parks, or construction sites, etc.

■ The City contends that the trial court's failure to make a specific finding on the Texas Equal Rights Amendment coupled with Williams' failure to request such a finding, preclude his complaints on appeal. The City relies on the following cases to support its proposition: *MBank Abilene, N.A. v. Westwood Energy, Inc.*, 723 S.W.2d 246 (Tex.App.—Eastland 1986, no writ); *Pinnacle Homes v. R.C.L. Offshore Engineering*, 640 S.W.2d 629 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Tidwell v. Lange*, 531 S.W.2d 384 (Tex.Civ.App.—Waco 1975, no writ). However, none of these cases require that the party with the burden of proof must obtain a finding of fact from the trial court when such fact is established as a matter of law. Therefore, our task is to determine whether Williams proved, as a matter of law, that the ordinance violates the equal rights of topless female dancers.

We must first examine the Texas Equal Rights Amendment and the standard by which sex-based discrimination is reviewed under that amendment.

The Equal Rights Amendment provides "[e]quality under the law shall not be denied or abridged because of sex...." TEX. CONST. art. I, sec. 3a. The Texas Supreme Court determined that the Equal Rights Amendment "elevated sex to a suspect classification" and was thus afforded maximum constitutional protection. *In Interest of McLean*, 725 S.W.2d 696, 698 (Tex.1987). Such gender-based classifications must fail unless compelling state interests are present. *Id.*

In *McLean*, the supreme court determined that an Equal Rights Amendment claim must undergo a two-part inquiry. First, we must determine whether the law discriminates against one sex simply on the basis of gender. *Id.* at 697. Second, if such law is found to be discriminatory, this discrimination will survive strict judicial scrutiny "only if the proponent can prove

that there is no other manner to protect the state's compelling interests." *Id.* at 698.

The burden of proof is initially on the complainant to prove such discrimination exists. If satisfied, this burden of proof shifts to the proponent of the discriminatory law, who must then prove that the discriminatory law is the only means by which the state's compelling interest can be protected. *Id.*

Williams introduced the ordinance into evidence. The ordinance prohibits clubs or bars which regularly feature female dancers with bare breasts within the proscribed 1,000 feet limits. Conversely, it allows clubs and bars to regularly feature male dancers with bare breasts within those same limits. Additionally, a Fort Worth City Councilman testified that the ordinance does not prohibit male topless dancing in areas where female topless dancing is prohibited. Thus, the ordinance and this testimony suggest that the differing treatment accorded establishments regularly featuring topless dancers is based solely on the gender of the dancer.

The City argues that the ordinance does not deal with females differently than males merely because they are female, but provides no basis *in the evidence* to support their position for such different treatment. Instead, it claims that males and females are treated differently in the ordinance "because of the obvious physical differences between men and women." The City contends that the differing treatment of males and females under the law is supported by the different physical characteristics inherent in each sex, citing dicta in *Mercer v. Board of Trustees*, 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). While we do not quarrel with the general proposition that different physical characteristics may lead to different laws, the City has completely failed to prove how these different physical characteristics *alone* necessitate differing treatment of males and females in this ordinance.[2]

2. At this point, we note that the City offered *no* evidence about the differences in physical char-

acteristics or how such differences relate to the

Two amici curiae[3] argue that the ordinance does not in fact deal with men and women differently because the body parts of both sexes commonly associated with sexual arousal are included in definition of nudity contained in the ordinance.

They rely on *City of Seattle v. Buchanan,* 90 Wash.2d 584, 584 P.2d 918, 920 (1978) to suggest that female breasts are erogenous zones associated with sexual arousal, while male breasts are not. We note that the *Buchanan* holding appears to be supported only by judicial notice and two humorous anecdotes from a Seattle newspaper.[4]

■ Our court is not authorized, however, to take judicial notice of the concept that the breasts of female topless dancers, unlike their male counterparts, are commonly associated with sexual arousal. Such a viewpoint might be subject to reasonable dispute, depending on the sex and sexual orientation of the viewer. *See* TEX. R.CIV.EVID. 201. Further, because the record contains no proof of these alleged facts or how they relate to secondary neighborhood effects, we overrule this argument.

Accordingly, we hold, as a matter of law, that the ordinance in question treats females differently merely because they are female and conclude that this is a gender-based distinction. Clubs regularly featuring topless female dancers are prohibited within the zoned 1,000 feet limits, while clubs regularly featuring male topless dancers are permitted within these same limits.

Under *McLean,* once sex-based discrimination is established, the City must prove (1) that it has a compelling interest which is furthered by the statute, and (2) that it has

no other manner to protect this compelling interest. *McLean,* 725 S.W.2d at 698.

The City did not put on any evidence to justify this discrimination. The City admits that it failed to offer any evidence suggesting that its interests could not be protected without discrimination. Likewise, the *amici curiae* do not cite us to any evidence in the record to this effect. Our examination of the entire record, including lengthy exhibits, provides no evidence tending to show that the City could not protect its interests in preventing secondary neighborhood effects without discrimination against females.[5] Their briefs do not direct us to supporting evidence, but argue various social theories instead.

Specifically, the City urges us to uphold the ordinance on the basis that "[n]udity is a social concept ... [and] [a]t present, community standards have determined that women's breasts are an intimate part of the human body...." The City also alleges that "exposure of male breasts is not considered sexually oriented."

We overrule the latter argument because there is no evidence that exposure of the breasts of male performers in bars which regularly feature such entertainment is not considered sexually oriented.

We overrule the City's community standards argument, because there is neither proof of community standards nor a connection shown between these alleged community standards and the need to adopt such discriminatory regulation. Community standards are not *necessarily* relevant subjects for consideration in sexual discrimination cases, as such notions often serve to maintain the very inequalities the Equal Rights Amendment was designed to abolish. *See* Schoen, *The Texas Equal Rights Amendment After the First Decade: Judicial Developments 1978–1982,* 20

---

ordinance's goal of preventing secondary neighborhood effects.

**3.** The brief was filed by the Texas Municipal League and the Texas City Attorney's Association.

**4.** A public lewdness ordinance was at issue in *Buchanan,* and the Supreme Court of Washington applied the federal, or intermediate, stan-

dard to determine whether the ordinance violated the rights of both topless female swimmers and sunbathers.

**5.** For example, we have found no reason why banning bars which regularly feature either male or female topless dancers within the 1,000 feet limits would not effectively accomplish the City's goals.

HOUS.L.REV. 1321, 1360 (1983); Brown, Emerson, Falk and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 YALE L.J. 871, 892 (1971). Also *see, e.g., Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 1377–78, 43 L.Ed.2d 688 (1975). We reiterate that we are not discussing community standards for appropriate attire in public places where unwitting observers may be subject to offense, such as are governed by public lewdness statutes.

The City finally argues that it has no other alternative to protect its compelling interests in preventing secondary effects, because the definition of nudity would be overbroad if it required male topless dancers to cover their breasts. We presume this argument is based on the notion that exposure of male breasts is not considered sexually oriented.

We overrule this argument for two reasons. First, it was not raised in the trial court to support the City's contention that no other means was available to protect the City's interest in preventing secondary neighborhood effects. Second, it assumes a fact not proved, that exposure of the breasts of male dancers in bars which regularly feature such dancers is not considered sexually oriented.

Although the City might have been able to prove that no nondiscriminatory way to accomplish the goals of this ordinance existed, it made no attempt to do so. For this reason, we are compelled to hold that Williams proved, as a matter of law, that the ordinance violates the right of female topless dancers to equal protection under the law. Because the ordinance discriminates against women on its face in its definition of nudity, and because the proponents of the ordinance have produced no proof that they cannot protect their interest in preventing secondary neighborhood effects without such discrimination, Williams' fourth point of error is sustained. We hold that part c) of the "State of Nudity" definition, relating to female breasts, is null and void in its application to adult nightclubs and bars.

■ In his fifth point of error, Williams argues the City ordinance violates the Texas Constitution because the Texas Alcoholic Beverage Code preempts the City's authority to regulate topless bars where alcohol is served.

Williams relies primarily on TEX. CONST. art. XI, sec. 5, which provides in pertinent part:

[N]o charter or any ordinance passed under said charter shall contain any provision inconsistent with ... the general laws enacted by the Legislature....

*Id.*

Williams argues the Texas Alcoholic Beverage Code includes not only regulations on the sale and distribution of alcohol, but also regulates conduct of the permit-holder in the entertainment provided in businesses selling alcohol. *See* TEX.ALCO.BEV. CODE ANN. sec. 104.01 (Vernon Supp. 1989). The Texas Alcoholic Beverage Code provides in pertinent part:

No person authorized to sell beer at retail ... may engage in or permit conduct on the premises of the retailer which is lewd, immoral, or offensive to public decency, including, ... any of the following acts:

....

(6) permitting lewd or vulgar entertainment....

*Id.* Williams notes that during the trial, Karen Hargus, an agent with the Texas Alcoholic Beverage Commission, testified that the Commission interpreted section 104.01(6) as allowing topless dancing.

Williams suggests that because the Texas Alcoholic Beverage Code allows topless dancing, the City may not enact an ordinance which prohibits or regulates topless dancing. We disagree with Williams' reasoning.

The state and federal courts agree that the Texas Alcoholic Beverage Code preempts the regulation of business regarding the sale of alcoholic beverages. Other activities that take place on such premises where alcoholic beverages are sold are subject to regulation by local governments. *Banknote Club v. City of Dallas*, 608 S.W.2d 716, 717 (Tex.Civ.App.

—Dallas 1980, writ ref'd n.r.e.); *Young, Wilkinson & Roberts,* 704 S.W.2d at 382; *SDJ,* 837 F.2d at 1280.

We agree with our sister courts that a local government is not prevented from enacting zoning regulations concerning sexually oriented businesses simply because the business is also regulated by the Texas Alcoholic Beverage Code. Instead, a home rule city is given broad zoning powers by the legislature. To hold that a city's zoning powers over a business selling alcoholic beverages are completely preempted by the Texas Alcoholic Beverage Code would, in effect, repeal many other statutory powers given to cities. Williams also argues that the ordinance conflicts with the Texas Alcoholic Beverage Code because Williams will be forced to relocate his business and may lose his liquor license as a result. Again, we disagree. A plain reading of the ordinance reveals the ordinance does not regulate Williams' ability to maintain or obtain a liquor license. Moreover, the ordinance does not force Williams to relocate his business. Instead, the ordinance simply requires dancers to comply with the dress regulation or move to another location in the city. Therefore, we overrule Williams' fifth point of error.

We modify the trial court's judgment to reflect that section 1B(9)(c) of Ordinance No. 9957 of the City of Fort Worth is unconstitutional in its application to adult nightclubs and bars. Specifically, we declare that the following portion of the definition of "NUDITY OR STATE OF NUDITY" as applied to adult nightclubs and bars is unconstitutional and void: "c) Female breast or breasts below a point immediately above the top of the areola." As modified, we affirm the judgment of the trial court. Costs on appeal are assessed against the City of Fort Worth. *See* TEX. R.CIV.P. 139.