Alan MESSINA, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–00847–CR.

Court of Appeals of Texas,
Dallas.

July 7, 1995.

Ronald L. McKinney, Tobolowsky, Prager & Schlinger, P.C., Dallas, John H. Tull, Jr., Irving, for appellant.

Ray Galvan, Jr., Asst. City Atty., Dallas, Don McNees, Asst. Dist. Atty., Dallas, for appellee.

## OPINION

BAKER, Justice.

The City of Dallas charged appellant with violation of the City's sexually oriented business ordinance. The municipal court found appellant guilty. He appealed to the county criminal court of appeals. He argued the City's ordinance violated the Texas Equal Rights Amendment. The county criminal court of appeals affirmed the municipal court's judgment. We affirm the county criminal court of appeals' judgment.

## THE BACKGROUND LITIGATION

### A. The Municipal Court

The City charged appellant with operating a sexually oriented business in violation of the Dallas City Code section 41A–13(a)(4). This ordinance defines a sexually oriented business as an adult cabaret. *See* DALLAS, TEX., CITY CODE § 41A–2(3) (1993). An adult cabaret is a bar regularly featuring persons performing in a "state of nudity." *See* DALLAS, TEX., CITY CODE § 41A–2(3)(A) (1993). "State of nudity" includes dress that fails to opaquely cover the areola of the female breast. *See* DALLAS, TEX., CITY CODE § 41A–2(15)(B) (1993).

Appellant moved the municipal court to quash the charging instrument. He alleged the ordinance violated the Texas Equal Rights Amendment. He claimed the definition of "state of nudity" violates the ERA because the definition treats females differently from males based solely on gender. The municipal court judge denied the motion.

Appellant pleaded not guilty to the charge. He waived a jury and agreed to a bench trial. The parties stipulated that the complaining witness would testify that Caligula XXI is a sexually oriented business, located at 2828 West Northwest Highway, within 1000 feet of a public park bordered by a residential area. They also stipulated the complaining witness would testify that Caligula XXI, as a sexually oriented business, was an adult cabaret. The trial judge took judicial notice of the City's ordinance during pretrial. The parties offered no other evidence. The municipal court found appellant guilty and assessed a $350 fine.

### B. The County Criminal Court of Appeals

The parties stipulated to the municipal court record as the appellate record in the county criminal court of appeals. Appellant raised one point of error. He contended the "state of nudity" definition in the sexually oriented business ordinance violated the ERA.

Based on the stipulated record, the county criminal court of appeals determined the municipal court took judicial notice of the common knowledge, common sense fact of physiological and sexual distinctions between male and female breasts. The county criminal court of appeals overruled appellant's point of error and affirmed the municipal court's judgment.

## APPELLANT'S POINT OF ERROR IN THIS APPEAL

Appellant contends the municipal court erred in convicting and sentencing him. In his point of error, he claims the City's sexually oriented business ordinance, as a matter of law, is a facially discriminatory ordinance. He argues the "state of nudity" definition in the ordinance is unconstitutional and void. He concludes his conviction and sentence

were void because the definition is unconstitutional.

## THE PARTIES' CONTENTIONS

### A. Appellant's Contentions

Appellant argues the "state of nudity" definition does not pass constitutional muster. He contends the ordinance is facially discriminatory because it treats females differently from males based solely on gender. Appellant relies on *Williams v. City of Fort Worth*, 782 S.W.2d 290 (Tex.App.—Fort Worth 1989, writ denied) to support this contention.

*Williams* was a civil declaratory judgment action. Williams, the operator of a sexually oriented business, attacked the validity of Fort Worth's ordinance regulating sexually oriented businesses. In particular, Williams attacked the "state of nudity" definition in Fort Worth's ordinance.

The *Williams* court held it could not take judicial notice of the physiological and sexual differences between male and female breasts. In the trial court, Fort Worth did not prove the alleged difference between male and female breasts. The *Williams* court held, as a matter of law, that the Fort Worth ordinance treated females differently from males based solely on gender. The *Williams* court concluded the "state of nudity" definition was a sexually discriminatory definition. The *Williams* court then held Fort Worth did not meet its burden to justify the discrimination or to show it could not protect its interest without such discrimination. The *Williams* court held the offending part of the "state of nudity" definition was void.

### B. The City's Contention

The City argues appellant did not prove, as a matter of law, that its definition of "state of nudity" was discriminatory. The City relies on this Court's opinion in *MJR's Fare of Dallas, Inc. v. City of Dallas*, 792 S.W.2d 569 (Tex.App.—Dallas 1990, writ denied) to support its argument. *MJR* was a civil declaratory judgment action. MJR operated a sexually oriented business. It attacked the validity of the City's sexually oriented business ordinance. In particular, MJR attacked the "state of nudity" definition in the City's ordinance. In *MJR*, the "state of nudity" definition was essentially the same as the "state of nudity" definition in *Williams*.

In *MJR*, the City introduced undisputed expert testimony that: (1) physiological and sexual distinctions exist between male and female breasts; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, not the male breast, is a mammary gland. We held that MJR did not meet its burden of proving "the state of nudity" definition discriminated against females based solely on gender.

The City argues we should apply *MJR* and decide this case on the basis of stare decisis. The City argues *MJR* is directly on point, and *Williams* is not.

## THE ISSUE

In this appeal, appellant contends the City's "state of nudity" definition is unconstitutional because it violates the ERA. He argues his conviction and sentence are void for that sole reason. Appellant does not argue the stipulated testimony is insufficient to support his conviction as a matter of legal sufficiency.[1] The only issue before this Court is whether the "state of nudity" definition is facially unconstitutional. Thus, the issue is one of statutory construction.

## APPLICABLE LAW

### 1. Review of Constitutionality of an Ordinance

Our Constitution provides that sex, race, color, creed, or national origin shall not deny or abridge equality under the law. *See* Tex. Const. art. I, § 3a. The Texas Equal Rights Amendment requires that courts subject sex-based classifications to strict judicial scrutiny. *See In re McLean*, 725 S.W.2d 696, 698 (Tex.1987). Under strict judicial scrutiny, we first determine whether the law discriminates against one sex based solely on

---

1. The stipulations by the parties are legally sufficient to prove all elements of the offense defined in the City's sexually oriented business ordinance. Thus, the evidence is sufficient to support the conviction on that ground.

gender. Our law allows sex-based distinctions if physical characteristics require those distinctions. *See MJR,* 792 S.W.2d at 575; *Mercer v. Bd. of Trustees,* 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Initially, the party challenging the law must show the law discriminates based solely on gender. The proponent of the law can rebut that premise if the proponent shows that physical characteristics require the sex-based distinctions. *MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206. If the proponent cannot overcome the initial premise, then the proponent of the discriminatory law must show that no other means exist to protect the state's compelling interest. *In re McLean,* 725 S.W.2d at 698; *MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206.

## 2. Stare Decisis

Under the doctrine of stare decisis, a court of last resort's determination on a question of law is a precedent governing the decision of later litigation involving the same point. *See Horne v. Moody,* 146 S.W.2d 505, 509 (Tex.Civ.App.—San Antonio 1940, writ dism'd judgm't cor.). The doctrine governs only the determination of questions of law and not questions of fact. *See Young v. State,* 488 S.W.2d 820, 821 (Tex.Crim.App. 1972); *Horne,* 146 S.W.2d at 509.

When the supreme court or a court of appeals, if the supreme court denies an application for writ of error, gives a particular effect to a statute or a fact situation, that determination is binding and conclusive on all later suits involving the same subject matter. This rule applies whether the parties are the same or not. *Horne,* 146 S.W.2d at 509; *see also Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964). Stare decisis applies when the facts of the prior case are substantially the same as those in the later case. *See McKenzie Constr. Co. v. City of San Antonio,* 50 S.W.2d 349, 353 (Tex.Civ.App.—San Antonio 1932, writ ref'd). Stare decisis is a matter of public policy and sound legal administration.

Accordingly, when a court settles a question of law, the decision should remain the law unless the strongest reasons exist for changing it. *See Benavides v. Garcia,* 290 S.W. 739, 740–41 (Tex.Comm'n App.1927, holding approved). Stare decisis controls if it makes sense or follows logical reasoning. *Middleton v. State,* 476 S.W.2d 14, 16 (Tex. Crim.App.1972). The doctrine is a rule of precedent. The doctrine creates a strong presumption in favor of established law. The doctrine has its greatest force in the area of statutory construction. *Collier v. Poe,* 732 S.W.2d 332, 345 (Tex.Crim.App.1987), *appeal dismissed,* 484 U.S. 805, 108 S.Ct. 51, 98 L.Ed.2d 15 (1987).

## APPLICATION OF LAW TO THE FACTS

This appeal is purely one of statutory construction. The operative facts of appellant's attack on the "state of nudity" definition are the same as in *MJR.* The question of law, as in *MJR,* is whether the City's "state of nudity" definition on its face violates the ERA.

Thus, we dispose of the issue as a question of law, and not of fact. We are bound by this Court's prior determination in *MJR* that the definition does not violate the ERA.

Neither the State nor its political subdivisions should face multiple attacks on their laws once a court of competent jurisdiction declares the law constitutional. The public policy basis for stare decisis compels this conclusion. We see no strong reasons to change the law *MJR* established. Our conclusion makes sense and follows logical reasoning. *See Middleton,* 476 S.W.2d at 16. Stare decisis creates a strong presumption for established law; that presumption remains unrebutted.

We conclude that *MJR,* not *Williams,* controls this appeal. Appellant has not advanced any strong reason for changing *MJR,* nor do we perceive any. We overrule appellant's point of error.

We affirm the county criminal court of appeals' judgment.

THOMAS, C.J. and KINKEADE, MALONEY, BARBER, MORRIS, WHITTINGTON and WRIGHT, JJ. join in this opinion.

LAGARDE, J. concurs in result only.

OVARD, J. concurring opinion in which JAMES, J. joins.

WHITHAM, J. (Assigned) dissenting opinion in which CHAPMAN, J. joins.

DEVANY, J. dissenting opinion.

OVARD, Justice, concurring.

I respectfully disagree with the majority's use of stare decisis to decide this case. I do not believe we decided the constitutionality of the "state of nudity" definition in *MJR's Fare of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569 (Tex.App.—Dallas 1990, writ denied). However, for the following reasons, I concur in the result of affirming the trial court's judgment.

## APPLICABLE LAW

### A. Statutory Analysis Under the Equal Rights Amendment

Sex shall not deny or abridge equality under the law. *See* TEX. CONST. art. I, § 3A. However, we do not review sex-based classifications under a standard that would automatically invalidate gender-based distinctions. *In re McLean,* 725 S.W.2d 696, 698 (Tex.1987). Thus, under the Texas Equal Rights Amendment, courts must strictly scrutinize any sex-based classification. *See id.; Mercer v. Board of Trustees,* 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Strict judicial scrutiny requires a two-pronged analysis. First, we determine whether the law discriminates against one sex based solely on gender. Sex-based distinctions are legally permissible if physical characteristics require those distinctions. *See MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206. Neither the Equal Rights Amendment nor the rights it establishes require the courts to construe it in a way that denies sexual or reproductive differences between the sexes. *Mercer,* 538 S.W.2d at 206.

Second, if we ascertain that the law is discriminatory, we then determine whether the State has any other means to protect its compelling interest. *See MJR,* 792 S.W.2d at 575. The discrimination can survive judi-

cial scrutiny only if no other means exist. *See MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206.

The party challenging the law has the initial burden of proof. He must show the law discriminates based solely on gender. *See MJR,* 792 S.W.2d at 575 (by failing to rebut proof of the physiological and sexual distinctions between male and female breasts, MJR failed to meet the first prong of the strict judicial scrutiny inquiry). To show the law discriminates based solely on gender, the challenging party must rebut any evidence that physical characteristics require the distinctions. *Id.; Mercer,* 538 S.W.2d at 206.

The burden of proof then shifts to the proponent of the law. The proponent can satisfy his burden by showing that no other means exist to protect the state's compelling interest. *See McLean,* 725 S.W.2d at 698; *MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206. If the proponent cannot satisfy his burden of proof, the discrimination cannot survive judicial scrutiny. *See MJR,* 792 S.W.2d at 575; *Mercer,* 538 S.W.2d at 206.

### B. *Williams* and *MJR*

To support his contentions, Messina relies on *Williams v. City of Fort Worth,* 782 S.W.2d 290 (Tex.App.—Fort Worth 1989, writ denied). The majority states that the *Williams* court held it could not take judicial knowledge of the physiological and sexual differences between male and female breasts. In actuality, the *Williams* court held:

Our court is not authorized, however, to take judicial notice of *the concept that the breasts of female topless dancers, unlike their male counterparts, are commonly associated with sexual arousal.*

*Williams,* 782 S.W.2d at 297. The court reached this conclusion because "[s]uch a viewpoint might be subject to reasonable dispute, depending on the sex and sexual orientation of the viewer." *Id.* Because the city failed to adduce any evidence that physical differences required the distinction, the *Williams* court held, as a matter of law, that the ordinance discriminated based solely on gender. *Id.* at 296–97. The city also failed to offer any evidence to justify the discrimi-

nation. *Id.* at 297. The *Williams* court held that ordinance's "state of nudity" definition unconstitutional and void. *Id.* at 299.

The City maintains that *MJR*, not *Williams,* should control this case. In *MJR,* the City introduced undisputed expert testimony that: (1) physiological and sexual distinctions exist between male and female breasts; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, not the male breast, is a mammary gland. *MJR,* 792 S.W.2d at 575. We held that MJR did not meet its initial burden of proof. *Id.*

### C. Judicial Notice

A judicially noticed fact must be one not subject to reasonable dispute. TEX.R.CRIM. EVID. 201(b); TEX.R.CIV.EVID. 201(b). A fact not subject to reasonable dispute is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R.CRIM.EVID. 201(b); TEX.R.CIV.EVID. 201(b). A court may take judicial notice whether or not a party requests it to do so. TEX.R.CRIM.EVID. 201(c); TEX.R.CIV.EVID. 201(c). A court may take judicial notice at any stage of the proceedings. TEX.R.CRIM.EVID. 201(f); TEX.R.CIV. EVID. 201(f).

### APPLICATION OF THE LAW TO THE FACTS

#### A. Judicial Notice and *Williams*

In *Williams,* the court determined it could not take judicial notice that female breasts, and not male breasts, were commonly associated with sexual arousal. *Williams,* 782 S.W.2d at 297. In this case, the county criminal court of appeals determined the municipal court took judicial notice that female and male breasts are physiologically and sexually different. The facts subject to judicial notice in this case differ from those in *Williams. See id.* Therefore, I disagree

1. In contrast, an association could not be considered *universal* if certain people might not them-

with Messina's contention that *Williams* controls the facts of this case.

Even if *Williams* were not distinguishable from this case, I would not agree with that court's analysis that it could not take judicial notice. The *Williams* court decided it could not judicially notice the distinctive "common association" because it might be subject to dispute depending on the sex and sexual orientation of the viewer. A fact is not subject to reasonable dispute if it is generally known within the court's territorial limits. TEX.R.CIV.EVID. 201(a); TEX.R.CRIM.EVID. 201(a).

A person can know that an association is commonly made without himself making that association. Thus, a *common* association is not rendered uncommon because some people might not themselves make that association.[1] Nor is a generally known association removed from general knowledge because certain people might not themselves make that association. A court has wide discretion as to what facts may be judicially noticed, within the limits of common sense and common knowledge. *James v. State,* 546 S.W.2d 306, 310 (Tex.Crim.App.1977). For these reasons, I do not agree with the *Williams* court that it could not take judicial notice of the common association of female breasts and sexual arousal simply because that association might differ depending on the sex and sexual orientation of the viewer.

#### B. Stare Decisis and *MJR*

The majority states, "We are bound by this Court's prior determination in *MJR* that the definition does not violate the Equal Rights Amendment." I do not agree that this Court made that determination in *MJR.*

In *MJR,* the City introduced expert testimony that: (1) physiological and sexual distinctions exist between the male and female breast; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, but not the male breast, is a mammary gland. *MJR,* 792 S.W.2d at 575. MJR did not offer any evidence to dispute this testimony. *Id.* The

selves make that association.

City argued on appeal that MJR, therefore, failed to meet its initial burden of proof. *Id.* We wrote:

> Because we agree with the City of Dallas that MJR failed to meet the first prong of the strict judicial scrutiny inquiry, we overrule its fourth point of error.

*Id.*

We held that MJR had not met the first prong of the two-pronged inquiry. We did not hold the statute was constitutional because we did not reach that point in the inquiry. Furthermore, we did not hold that physiological and sexual distinctions exist between male and female breasts. As a result, the doctrine of stare decisis does not support a holding in this case that the statute does not violate the Equal Rights Amendment.

### C. Judicial Notice and the Trial

In his motion to quash the charging instrument, Messina claimed the "state of nudity" definition discriminates against females solely on the basis of gender. The municipal court denied the motion. The county criminal court of appeals found the municipal court took judicial notice of the common-knowledge, common-sense fact that male and female breasts are physiologically and sexually different.

It is well settled in Texas that a trial court has wide discretion to determine which facts may be judicially noticed in a civil case. *James,* 546 S.W.2d at 310. Within the limits of common sense and common knowledge, that rule is also applicable in criminal trials. *Id.; compare* TEX.R.CRIM.EVID. 201 *with* TEX. R.CIV.EVID. 201. A court of appeals may presume that the trial court, in support of its judgment, took judicial notice of the fact

mentioned above, even though the trial court was not asked to do so and did not formally announce that it had done so.[2] *Bloom v. Bloom,* 767 S.W.2d 463, 471 (Tex.App.—San Antonio 1989, writ denied) (usual and customary fees and contents of the case file); *Vahlsing, Inc. v. Missouri Pac. & Co.,* 563 S.W.2d 669, 674 (Tex.Civ.App.—Corpus Christi 1978, no writ) (events that have previously taken place in the case on trial); *Texas Sec. Corp. v. Peters,* 463 S.W.2d 263, 265 (Tex.Civ.App.—Fort Worth 1971, no writ) (records of the district court and facts shown by court records of case on trial); *Buckaloo Trucking Co. v. Johnson,* 409 S.W.2d 911, 913 (Tex.Civ.App.—Corpus Christi 1966, no writ) (various geographic facts); *see Baker v. Kunzman,* 873 S.W.2d 753, 756 (Tex.App.— Tyler 1994, writ denied) (usual and customary fees and contents of the case file).

Messina did not provide evidence to rebut the common-knowledge, common-sense fact that male and female breasts differ physiologically and sexually. Thus, he failed to meet the first prong of the strict judicial scrutiny inquiry. *See MJR,* 792 S.W.2d at 575. Consequently, I would overrule Messina's sole point of error and affirm the trial court's judgment.

WARREN WHITHAM, Justice (Assigned), dissenting.

I respectfully dissent. Appellant appeals a conviction in the municipal court of the City of Dallas, Texas, for operating a sexually oriented business within 1,000 feet of a public park in violation of Dallas City Code Section 41A–13(A)(4). The trial court denied appellant's pretrial motion to quash the charging instrument. The trial court assessed a fine

2. On appeal to this Court, Messina chose to file his county criminal court of appeals brief in accordance with section 30.404 of the Texas Government Code. That brief did not contain any argument on, mention of, or reference to the municipal court's taking judicial notice. The brief did not explain how the taking of judicial notice constituted error. Section 30.404 provides that the record and brief on appeal in the appellate court constitute the record and briefs on appeal to the court of appeals, unless the rules of the court of criminal appeals provide otherwise. TEX.GOV'T CODE ANN. § 30.404(1) (Vernon 1988). Rule 74 of the Texas Rules of Appellate Procedure provides that a brief to the court of appeals shall contain, among other things: (1) a statement of the points upon which the appeal is predicated, and (2) a discussion of the facts and authorities relied upon to maintain each point. TEX.R.APP.P. 74(d), (f). Furthermore, rule 74 provides for amendment or supplementation of briefs when justice requires. TEX.R.APP.P. 74(*o*). Messina's choice to rely solely on the brief from the county criminal court of appeals limits our review to the issues in that brief. Thus, Messina presents this Court no error to review regarding the municipal court's taking judicial notice.

of $350.00 plus court costs. The County Criminal Court of Appeals affirmed the trial court's judgment. Appellant appeals to this court. In his sole point of error, appellant contends that the trial court erred in convicting and sentencing appellant because the Dallas City Code, as a matter of law, is a facially discriminatory ordinance, that there was no proof that the city could protect its interest without such discrimination, that the definition of "state of nudity" in the code provision under which appellant was convicted is void, and therefore, appellant's conviction and sentence is void. The issue as given us centers on the code's definition of a "state of nudity" as being a state of dress which fails to opaquely cover the areola of the female breast. The parties approach to briefing is short and direct. Appellant points to *Williams v. City of Fort Worth,* 782 S.W.2d 290 (Tex.App.—Fort Worth 1989, writ denied), and prays that we reverse. The city cites *MJR's Fare of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569 (Tex.App.—Dallas 1990, writ denied), and prays that we affirm. On this record, I cannot agree that *MJR* controls. *MJR* does not control because the city failed to adduce the evidence required under *MJR* to save the code from constitutional infirmity and make the code applicable to appellant. Therefore, I would apply the reasoning found in *Williams.* Accordingly, I would reverse and remand to the trial court with instructions to dismiss the complaint.

## Introduction

Both *Williams* and *MJR* were declaratory judgment actions in which Williams and MJR attacked the validity of similar "state of nudity" city code provisions of the cities of Fort Worth and Dallas pertaining to sexually oriented businesses. The Dallas code provision before us in the present case was the Dallas code provision before us in *MJR.* To understand why I would follow *Williams* rather than *MJR,* the reader, at the outset, must know that in *MJR,* the city, as its burden of proof, adduced undisputed expert testimony that (1) physiological and sexual distinctions exist between the male and female breast; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, but not the male breast, is a mammary gland. *MJR,* 792 S.W.2d at 575. No similar evidence was offered by the city in *Williams.* The absence of such evidence was noted by the *Williams* court. *Williams,* 782 S.W.2d at 296, n. 2. With respect to this burden of proof, the *Williams* court observed that while it did not quarrel with the general proposition that different physical characteristics may lead to different laws, the city has completely failed to prove how these different physical characteristics *alone* necessitate differing treatment of males and females in the ordinance. *Williams,* 782 S.W.2d at 296 (emphasis in opinion). Thus, *Williams* established the city's burden of proof later accepted and undertaken by the city of Dallas in *MJR.* The city of Dallas, however, in this criminal prosecution of appellant, produced no such evidence. To my mind, the city's failure to meet its burden of proof is fatal to the city's criminal prosecution of appellant.

Hence, we reach the crux of my difference with the majority. In my view, the majority suggests two means by which to supply this missing evidence to the appellate decision-making process; first, the use of judicial notice of adjudicative facts; and second, application of the doctrine of stare decisis. To my mind, neither of the two means of supplying absent evidence is proper, whether taken separately or in combination. With the appeal in this posture, we must decide whether our prior decision in *MJR* controls (provided we take judicial notice of operative facts and apply the doctrine of stare decisis). In my view, we cannot take judicial notice or apply the doctrine of stare decisis as the majority would have us do. Because we cannot take judicial notice of operative facts and apply the doctrine of stare decisis, it follows that *MJR* does not control. Therefore, we must follow *Williams* and reverse. I would reverse because the code as applied to appellant on this record suffers constitutional infirmity and is void for purposes of criminal prosecution of appellant. The code cannot be the basis of appellant's conviction because the city failed to prove operative facts which we held in *MJR* to be essential to validate application of the code.

## The Issue of Judicial Notice

The majority tells us that based on the stipulated record, the county criminal court of appeals determined the municipal court took judicial knowledge of the common knowledge, common sense fact of physiological and sexual distinctions between male and female breasts. I agree that the trial court took judicial notice of common knowledge differences between male and female breasts. I disagree that the trial court could take judicial notice of common knowledge differences between male and female breasts. Nevertheless, the trial court addressed and applied the doctrine of judicial notice to supply the operative facts controlling the outcome of the present case. Unlike the trial court, the majority does not specifically address the question of judicial notice. In my view, however, the majority applies the doctrine of judicial notice and in effect holds that a court may take judicial notice of common knowledge difference between male and female breasts. As I explain later, the majority makes this application of judicial notice through its use of the doctrine of stare decisis. Therefore, I first discuss the majority's silent but erroneous application of the doctrine of judicial notice before reaching the majority's written but erroneous application of the doctrine of stare decisis.

As indicated, the majority would affirm on two grounds: first, that the trial court could take judicial notice of the operative facts; and second, that under the doctrine of stare decisis, *MJR* controls the application of law to the facts in this case. I recognize that the majority does not state two separate and distinct grounds for affirming. Instead, the majority in effect, erroneously looks to the concept of judicial notice to establish the facts adverse to appellant by acknowledging the trial court's taking of judicial notice. Only then, and by the magic of judicial notice, does the majority hold that under the doctrine of stare decisis *MJR* controls the application of law to the facts in this case.

In any event, let us consider the matter of judicial notice. Rule 201(b) of the Texas Rules of Criminal Evidence provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Apparently applying this rule, the majority appears to agree with the trial court that a court may take judicial notice of common knowledge differences between male and female breasts.

*Williams* discusses two cases cited in support of the argument that a court may take judicial notice of common knowledge differences between male and female breasts. *Mercer v. Board of Trustees,* 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) and *City of Seattle v. Buchanan,* 90 Wash.2d 584, 584 P.2d 918, 920 (1978). As to both *Mercer* and *City of Seattle,* I do not find reference to "judicial notice" or a court's right to take judicial notice. *Mercer* was a high-school-boy's "long hair case" in which the court pontificated: "With respect to 'physical characteristics' we are simply recognizing the facts of life. For us to adjudicate that women are men would be as futile as it would be absurd." *Mercer,* 538 S.W.2d at 206. Nowhere in *Mercer* did the appellate court undertake to allow the doctrine of judicial notice to supply an operative fact of the "facts of life" or that "women are men" or that men and women are physically different.

In *City of Seattle,* appellants were convicted in municipal court of violations of a city ordinance defining as "lewd conduct" and making unlawful the public exposure of one's genitals or female breasts. At trial, the appellants offered testimony of a physician who said that there is no difference in the composition of the flesh of male and female breasts; that the breasts do not form a primary sex characteristic but a secondary one; and that the degree of development of the breasts does not determine sex. The physician said, in clarification of this latter testimony, that some men have breasts as large as those of some small-breasted women. *City of Seattle,* 584 P.2d at 919. The court went on to observe that the city council was "concerned" with those body parts and functions which, according to society's common sense of decency, should be kept private. *City of Se-*

*attle,* 584 P.2d at 920. In my view the "concerns" of lawmakers do not rise to the level of judicial notice in court. Indeed, the lawgiver acts on the public's concerns; the judicial officer, on the other hand, must act on proven facts heard in open court. In *City of Seattle,* the court goes on to say that when the legislative intent is to protect the public concern for the privacy of intimate functions, common knowledge tells us, as it undoubtedly told the trial judge, that there is a real difference between the sexes with respect to breasts, which is reasonably related to the preservation of public decorum and morals. Governmental bodies have a right to enact laws to maintain a decent society. *City of Seattle,* 584 P.2d at 920.

As in *Mercer,* the court in *City of Seattle* was reflecting on the purpose and propriety of legislation. The court did not undertake to apply the doctrine of judicial notice to supply an operative fact of any party's burden of proof in a criminal prosecution. If the court in *City of Seattle* was addressing evidentiary matters in that case, it did no more than say that the trial court was not obligated to credit all or any part of the appellant's medical expert witness. Certainly, the court in *City of Seattle* fails to mention the taking of judicial notice. In sum, these two cases do not support a holding that a court may take judicial notice of common knowledge differences between male and female breasts.

Almost a century ago, our Court of Criminal Appeals admonished us to be cautious in the exercise of judicial power to take judicial notice. Where a court is authorized to take judicial cognizance of matters, it is held that this power must be exercised with caution, and care must be taken that the requisite notoriety exists, and every reasonable doubt upon the subject should be promptly resolved in the negative. *Bland v. State,* 42 Tex. Crim. 286, 59 S.W. 1119, 1120 (1900). Our sister court of appeals has taken this admonition to heart in *Williams.* There it was held that courts are not authorized to take judicial notice of the concept that the breasts of female topless dancers, unlike their male counterparts, are commonly associated with sexual arousal. Such a viewpoint might be subject to reasonable dispute, depending on the sex and sexual orientation of the viewer. *See Williams,* 782 S.W.2d at 297. In reaching this conclusion, the *Williams* court rejected application of *Mercer* and *City of Seattle,* but not necessarily on the same grounds that I do. Nevertheless, in my view, a court may not take judicial notice of common knowledge differences between male and female breasts. Indeed, both the presence of the expert testimony in *City of Seattle* and the absence of such testimony observed by the court in *Williams* tells us that "differences" between male and female breasts is an operative fact subject to reasonable dispute in this type of case. Hence, Rule 201(b) of the Texas Rules of Criminal Evidence does not allow judicial notice of the "differences" between male and female breasts. Thus, I would follow *Williams* in the disposition of the present case. Therefore, I cannot agree that the trial court could take judicial notice of the operative facts.

### The Issue of Stare Decisis

But, as seen, the majority does not openly address the question of judicial notice. Instead, the majority claims to apply the doctrine of stare decisis. That the majority errs in relying upon the doctrine of stare decisis is clear from decisions of our Court of Criminal Appeals. The doctrine of stare decisis governs only the determination of questions of law and not questions of fact. It is a rule of precedent. *Young v. State,* 488 S.W.2d 820, 821 (Tex.Crim.App.1972). Here it is a question of fact that is in issue. *Young,* 488 S.W.2d at 821. In the present case, we have a question of fact for decision in determining application of the code. Stare decisis should be controlling only if it makes sense or follows logical reasoning. *Middleton v. State,* 476 S.W.2d 14, 16 (Tex.Crim.App.1972). While the doctrine of stare decisis should be controlling only if it makes sense or follows logical reasoning, it is a rule of precedent, and creates a strong presumption in favor of established law. The doctrine has its greatest force in the area of statutory construction. *Collier v. Poe,* 732 S.W.2d 332, 345 (Tex.Crim.App.), *appeal dism'd,* 484 U.S. 805, 108 S.Ct. 51, 98 L.Ed.2d 15 (1987). In the present case, we do not address statutory construction. We did that in *MJR.* Rather,

we are confronted with missing facts necessary to be proved by the city and improperly sought to be supplied by the majority under the guise of judicial notice. To my mind, application of the doctrine of stare decisis does not make sense and does not follow logical reasoning. Indeed, it defies logic to say, as does the majority, that a rule of precedent creating a strong *presumption* in favor of established *law* somehow creates a strong *presumption* of *facts* in a criminal prosecution. I cannot agree that an accused can be convicted of a crime on *presumed* facts.

Consider the "judicial notice" used by the majority to force application of *MJR* upon appellant under the doctrine of stare decisis. The majority, having first recognized that the trial court took judicial notice of common knowledge differences between male and female breasts, then moves on to a discussion of the doctrine of stare decisis. The doctrine of stare decisis refers only to questions of law. *See Horne v. Moody,* 146 S.W.2d 505, 509 (Tex.Civ.App.—San Antonio 1940, writ dism'd judgm't cor.). The majority states that stare decisis applies when the facts of the prior case are substantially the same as those in the later suit. *See McKenzie Constr. Co. v. City of San Antonio,* 50 S.W.2d 349, 353 (Tex.Civ.App.—San Antonio 1932, writ ref'd). Therefore, to apply the doctrine of stare decisis in the present case, the majority must find a prior case with facts and questions of law substantially the same as those of the present case. To this end, the majority cites *MJR.* Here, I note that the "facts" of *MJR* can only be substantially the same as those of the present case if those "facts" of *MJR* are supplied to the present case by the majority's judicial notice.

*MJR* is a civil case, not a criminal case. MJR appealed the granting of a declaratory judgment upholding the constitutionality of the city ordinance before us. *MJR,* 792 S.W.2d at 571. Because MJR failed to meet the first prong of the strict judicial scrutiny inquiry, we found that the code, with its gender based classifications, did not violate the Equal Rights Amendment of the Texas Constitution. *See* Tex. Const. art. I, § 3a. *MJR,* 792 S.W.2d at 575. Nevertheless, the fact that MJR failed in its burden had no bearing on the city's prior burden to prove to the fact-finder the male-female breast distinctions and differences. This burden the city met in *MJR* by expert testimony. This burden the city did not even attempt to meet in the present case. Hence, the city in the present case is in the same posture as was the City of Fort Worth in *Williams.*

In *MJR,* we held that the Equal Rights Amendment requires Texas courts to subject sex-based classifications to strict judicial scrutiny. *MJR,* 792 S.W.2d at 575. We further held that equal rights claims must undergo two-part inquiries. *MJR,* 792 S.W.2d at 575. First, we must determine whether the law discriminates against one sex on the basis of gender. Second, if we find the law discriminatory, this discrimination only survives judicial scrutiny if the proponent proves that no other means exist to protect the state's compelling interest. *MJR,* 792 S.W.2d at 575. Initially, the burden of proof falls on the complainant to prove such discrimination exists. If satisfied, the burden of proof then shifts to the proponent of the discriminatory law, who must prove no other means exist to protect the state's compelling interest. *MJR,* 792 S.W.2d at 575.

In *MJR,* MJR asserted that it met its burden of proof as to the first prong of the inquiry because the inclusion of the term "areola of the female breast" in the code without similar requirements for male performers unfavorably discriminated against females. *MJR,* 792 S.W.2d at 575. In response to MJR's argument under the first prong, the city proceeded to adduce evidence. In order to show under the first prong of the inquiry that the law did not discriminate against females solely on the basis of gender, the *city* introduced undisputed expert testimony that (1) physiological and sexual distinctions exist between the male and female breast; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, but not the male breast, is a mammary gland. *MJR,* 792 S.W.2d at 575. Thus, in *MJR,* the city understood, and we determined, that it was the city's burden at the outset to save the code from constitutional infirmity by proving to

the fact-finder the male-female breast distinctions and differences. Nevertheless, in the present case, the majority would come to the city's rescue by holding that the trial court could save the city by the happy circumstance of taking judicial notice by way of the doctrine of stare decisis of the required operative facts in this criminal prosecution brought under the very code before us in *MJR.*

As indicated, the city's victory in the *MJR* civil case was fact intensive and fact controlled as to outcome. But this appellant was not a party to that civil case. I find it inconceivable that the majority can bind appellant to facts once proved in *MJR.* I cannot agree that by "judicial notice" by way of "stare decisis" *MJR*'s facts are cast in concrete. Any first year law student can envision the results of the majority's approach. The city files charges in municipal court; the trial court takes judicial notice of the code; the assistant city attorney calls the trial court's attention to *MJR* and its operative facts; the trial court on its own motion takes judicial notice of those operative facts; and the accused stands guilty as charged by the saving grace of the majority's concept of judicial notice and stare decisis. The consequences of this means of criminal law procedure boggles the mind. Without much research, I am satisfied that prosecutors throughout the state can locate any number of murder, rape, robbery, etc. cases with state's-burden facts requiring expert testimony which are similar to that of many a subsequent accused, and thereafter argue the majority's reasoning. Thus ends the rule of law that to obtain a guilty verdict, the State must prove its case. I refuse to agree to a holding whereby this court will do the State's job for it.

### The Issue of Combining Judicial Notice and the Doctrine of Stare Decisis

I cannot agree that a person charged with violating a criminal statute or code can be convicted of a violation of that statute or code under the operative facts proved in an unre-lated previous civil or criminal case involving the same statute or code. To my mind, the majority uses a blending of the doctrine of stare decisis and of judicial notice to affirm appellant's conviction by transferring the factual evidence produced by the city in *MJR* to the inadequate trial record in the city's prosecution of appellant in the present case. I cannot agree to be a party to the demise of the right of cross-examination and the right to offer rebuttal evidence in a criminal prosecution. Lost also in the majority's judicial slight of hand is the requirement that the State has the burden of proof beyond a reasonable doubt in a criminal prosecution. Indeed, the majority ignores the city's burden of proof beyond a reasonable doubt in the present case when, in the civil case, *MJR* had only to persuade by a preponderance of the evidence.[1]

### The Majority's Concept of Stare Decisis as Public Policy

The majority tells us that neither the State nor its political subdivisions should face multiple attacks on their laws once a court of competent jurisdiction declares the law constitutional. The majority reasons that the public policy basis for the doctrine of stare decisis compels this conclusion. Grounded on this public policy consideration, the majority looks to *MJR* and affirms. *Williams,* however, was decided before *MJR* and held Fort Worth's version of the code unconstitutional. Indeed, the majority points to no differences in the two municipal codes. Thus, *Williams* becomes stare decisis. Therefore, if the public policy basis for stare decisis upon which the majority now grounds its decision is compelling, then I submit that this Court should not have revisited the issue in *MJR,* but written the controlling words "stare decisis" after citing *Williams* and ruled against the city in *MJR.* In my view, this Court properly revisited the issue in *MJR* because the record in *MJR* contained evidence of the operative facts required to decide the principal issue in these type of cases under the code in question. But in the present case, those operative facts are not in

---

1. Assuming the city's burden of proof on constitutional applicability of the code (as distinguished from appellant's guilt) to be by the pre-ponderance of the evidence, there remains the denial of cross-examination and tender of rebuttal evidence.

our record. Thus with the same allegiance to the doctrine of stare decisis as that professed by the majority, I would apply the holding in *Williams* to the record before us in the present case.

## Conclusion

The majority's silent application of Rule 201(b) of the Texas Rules of Criminal Evidence goes too far. Moreover, I cannot agree that this court, by use of the doctrine of stare decisis, can supply the operative facts of a criminal prosecution taken from an opinion disposing of a civil case. On this record, I agree with appellant that we should follow *Williams.* Here, as in *Williams,* the target of the code stood his ground when a city threatened the target's interests but failed to prove essential elements of the city's case. Here, as in *Williams,* the court should refuse to come to the aid of the city with a "little judicial notice" necessary to invoke stare decisis. On this record, I conclude that application of the "state of nudity" provisions to appellant is unconstitutional and void. I reach this conclusion because the city failed to save the code from constitutional infirmity as to appellant under the first prong of the inquiry as mandated by this Court in *MJR. See MJR,* 792 S.W.2d at 575. Therefore, on this record, there exists no valid law denouncing as a crime the acts charged against appellant. Consequently, I would sustain appellant's sole point of error, reverse, and remand to the trial court with instructions to dismiss the complaint.

CHAPMAN, J. joins in this opinion.

DEVANY, Justice, dissenting.

I respectfully disagree with the majority. The City of Dallas ordinance in this case prohibits the exposure of the female breast. The female breast is *unique to women.* The Texas Constitution prohibits such a statute because it discriminates based upon gender. Therefore, the ordinance is unconstitutional on its face.

Furthermore, I respectfully disagree with Justice Whitham's dissent because it would allow the State in a future case to offer proof about the flesh-and-blood composition of the female breast to magically transform the ordinance into one that passes constitutional muster. No amount of evidence that might be produced by the State in the face of the constitutional challenge by Messina can overcome this facially unconstitutional ordinance.

I find that the holdings in *Williams v. City of Fort Worth,* 782 S.W.2d 290 (Tex.App.—Fort Worth 1989, writ denied), and *MJR's Fare of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569 (Tex.App.—Dallas 1990, writ denied), *both civil cases* cited by the majority and the dissent, would also allow the State to blow life into this facially unconstitutional statute by producing experts that can explain the flesh-and-blood composition of the female breast. Such proof is but a detailed biological explanation of one of the fundamental differences between men and women. Such an explanation of any difference between men and women does not change the concept of the Texas Constitution which *strictly* prohibits any legislation that would discriminate based upon gender. I would not follow *Williams* nor *MJR* insofar as permitting the city ordinance in this *criminal case* to become valid in view of the challenge by Messina because of the basic fact that the ordinance is facially unconstitutional.

Compare, for example, a case where discrimination because of race is prohibited by the Texas Constitution. Common sense tells us that no explanation of the composition or cause of skin pigmentation will save any statute that discriminates because of race.

Therefore, I would hold that the Dallas City ordinance in this case is facially unconstitutional.

I would reverse and remand with instructions to dismiss the complaint against Messina.